KING, P.J.,
for the court.
¶ 1. Elmer L. Rea appeals the decision of the Monroe County Circuit Court affirming the Mississippi Workers’ Compensation Commission which determined that Rea did not suffer a work-related injury to his back on July 5, 1996. Aggrieved by this decision, Rea raises the following issues on appeal:
I. Did the Claimant suffer a work-related back injury on July 5,1996?
II. Did the Claimant suffer a permanent disability from the work-related injury?
III. Was medical treatment by Dr. Do-minie Cannella reasonable and necessary?
FACTS
¶ 2. During the early part of 1996, Rea was employed as an electrician by Rust Engineering at a chemical plant located in Aberdeen, Mississippi. Rea’s job at the plant was to put “heat sinks on pipes to prevent them from freezing during cold weather.” According to Rea, on July 5, 1996, while working at the plant, he attempted to step onto a beam and his foot slipped. Rea claimed that he fell back and hit a steel beam causing injury to his left leg and back.
¶ 3. That evening, Rea went to see Dr. Arthur Brown in Aberdeen. Rea stated that he told Dr. Brown that his leg and back were hurting. Dr. Brown gave Rea an injection for pain and prescribed medication. The following Monday, Rea returned to work. According to Rea, he went to the first aid office claiming to have pain in his back and leg. The safety manager inspected Rea’s leg and advised him to see a doctor. Rea returned to Dr. Brown, who after examining Rea, admitted him to the hospital, where he remained for approximately one week. Upon release, Rea returned to work at Rust Engineering, and was given “light duty” (Rea sat in a chair and issued tools to other workers). Rea performed this assignment for approximately one week.
¶ 4. Rea testified that after that week, he no longer worked for Rust Engineering. While unable to recall what happened regarding his employment at Rust, Rea acknowledged that Rust had contacted him on several occasions about working on other projects. Following his employment with Rust Engineering, Rea worked as an electrician with two other companies.
¶ 5. Rea continued to see Dr. Brown for problems related to his leg. Rea claimed that his back was hurting at the same time that his leg was in pain, but that his leg was hurting worse. Dr. Brown thought Rea’s leg problem was probably related to a different matter, diabetes.
¶ 6. According to Dr. Brown, Rea reached maximum medical improvement on July 19, 1996, from his work-related injury of July 5, 1996. Rea was released from Dr. Brown’s care regarding his work-related injury with no restrictions or impairment ratings from his injury.
¶ 7. On November 4, 1996, Rea visited Pascagoula, Mississippi, where he went to the emergency room at the Singing River Hospital due to complaints of back pain. Under “chief complaints,” the medical records from the hospital state that Rea complained of “low back pain x one week-coughed & sneezed real hard & felt back ‘pop.’ ” The emergency room physician prescribed a medication, which Rea states was ineffective for back pain.
*782 ¶ 8. As Rea claims to have had continued problems, he saw Dr. Gilliland in Tupelo who subsequently referred him to Dr. Dominic Cannella, a back surgeon. Dr. Can-nella’s records, which showed that Rea’s chief complaint on October 30, 1997, was “left leg pain of an uncertain etiology,” contained the following history of Rea’s illness:
The patient is a 68 year old white male whose history dates back one year ago when he fell from a steel beam and injured his left leg. He has complained of left leg pain ever since.
He denies low back pain, but he does describe pain in the left buttock, left lateral thigh, left lateral calf, and left pretibial area, with associated paresthe-sias involving the left lateral calf, left pretibial area, and along the medial aspect of the left foot. He denies left leg weakness.
¶ 9. In November 1997, Dr. Cannella, in response to Rea’s complaint of left leg and lower back pain performed back surgery on Rea. Rea indicated the receipt of some relief from this surgery, but stated the back pain returned. In January 1998, Dr. Cannella performed a second back surgery on Rea. Rea testified that Dr. Cannella recommended that a third back surgery be performed. However, Rea requested that it be put off.
¶ 10. Eddie Harris, Rust Engineering’s safety manager, testified as the employer’s representative. Harris testified that while all employees are made aware of the necessity of reporting on-the-job injuries, Rea never reported any problems with his back nor did he report that he had fallen on his back. Harris stated that the only injury he was aware of was the injury to Rea’s leg. Harris also denied that Rust Engineering had been advised by Rea’s doctor to place him on “light duty.” At the hearing on June 29, 1999, Rea stated that he did not tell his employer anything about the injury on the day it occurred.
¶ 11. Rea’s supervisor, Charles Hewlett, testified by deposition. Hewlett stated that as a matter of practice he always documented on-the-job injuries, and the lack of a record meant no injury was reported to him. Rea disputed that testimony.
¶ 12. On January 6, 1997, Rea filed a petition to controvert with the Mississippi Workers’ Compensation Commission alleging that he injured his left leg while “putting up pipe and hit his shin on some steel after he slipped.” On January 30, 1997, Rust Engineering and its insurance carrier, Liberty Mutual, filed an answer denying Rea’s claim. On March 24, 1997, Rust Engineering and Liberty Mutual filed an amended answer admitting that Rea sustained a leg injury but denied further benefits.
¶ 13. On January 20, 1998, Rea filed an amended petition to controvert, claiming that he injured his left leg and his back on-the-job on July 5, 1996. On January 27, 1998, Rust Engineering and Liberty Mutual filed a second amended answer admitting that Rea sustained an injury to his left leg only and denying any occurrence or causal connection of any alleged back injury.
¶ 14. On June 29, 1999, a hearing was held before Administrative Law Judge Melba Dixon. On August 31, 1999, Judge Dixon ordered:
1. Temporary total disability benefits at the rate of $264.44 per week beginning July 5, 1996 and continuing until July 19, 1996. There shall be added to each installment of compensation not timely paid the equivalent of 10% thereof as provided in Mississippi Code Annotated Section 71-3-37(5) of the Act, together with interest at the legal rate on *783 all unpaid installments. The employer/carrier is entitled to credit for any such payments of compensation heretofore made to claimant or for any wages earned by the claimant during this period of time.
2. Pay for, furnish and provide to the claimant all reasonable and necessary medical services and supplies as the nature of claimant’s injury to his left leg or the process of his recovery may require pursuant to Section 71-8-15 (1972), as amended and the Medical Fee Schedule.
¶ 15. On September 15, 1999, Rea filed a notice of appeal to the Full Commission. On June 18, 2000, the Full Commission affirmed the order of the administrative law judge. On June 19, 2000, Rea filed a notice of appeal to the Circuit Court of Monroe County, Mississippi, which on March 23, 2001, sustained the order of the Full Commission.
ISSUES AND ANALYSIS
I.
Did the Claimant suffer a work-related back injury on July 5,1996?
¶ 16. The standard of review utilized by this Court when considering an appeal of a decision of the Workers’ Compensation Commission is as follows:
The Commission is the trier and finder of facts in a compensation claim. Inman v. Coca-Cola/Dr.Pepper Bottling Co., 678 So.2d 992, 993 (Miss.1996). This Court will reverse only where a Commission order is clearly erroneous, manifestly wrong and contrary to the weight of the credible evidence. Vance v. Twin River Homes, Inc., 641 So.2d 1176,1180 (Miss.1994). “This Court will overturn a Commission decision only for an error of law, or an unsupportable finding of fact.” Georgia Pacific Corp. v. Taplin, 586 So.2d 823, 826 (Miss. 1991). Reversal is justified only when a commission order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law. Smith v. Jackson Const. Co., 607 So.2d 1119, 1124 (Miss.1992). Our task is to review the Commission’s decision for validity, even though the appeal is technically from the circuit court. Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991). An appellate court is bound even though the evidence would convince that court otherwise if it were instead the ultimate fact finder.
Posey v. United Methodist Senior Services, 773 So.2d 976 (¶ 5) (Miss.Ct.App.2000).
¶ 17. Rea contends that the administrative law judge erred in failing to find that he suffered a work-related back injury on July 5,1996. Rea asserts that prior to the accident on July 5, 1996, he never had any problems with his back. Rea claims that when placed in the hospital in July 1996 by Dr. Brown, he informed the hospital personnel that his leg and back were hurting. However, Dr. Brown’s discharge diagnosis of Rea was “Cellulitis, left leg (Erysipelas); non-insulin dependent diabetes mellitus, controlled; Hypertension, and peripheral vascular disease.” While Rea’s main complaint was his left leg, he did go to the emergency room at the Singing River Hospital for his back in November 1996.
¶ 18. According to the evidence presented, Rea had back surgery in November 1997. However, Rea saw Dr. Can-nella, the surgeon, in October 1997, a little more than one year after his fall on July 5, 1996. Dr. Cannella’s records do not reveal that Rea’s back pain was caused by his July 5th injury. After the surgery, Rea filed an amended petition to controvert to include an injury to his back. Rea main *784 tains that the only reasonable explanation for his back injury is the fall on July 5, 1996. Rea had the burden of proving by a “fair preponderance of the evidence” the following elements: “(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the death or claimed disability.” Adams v. Lemuria, Inc., 738 So.2d 295(¶ 9) (Miss.Ct.App.1999). The Commission found that he did not do so. The Commission is the trier of fact, and where supported by substantial evidence, we are required to accept its findings of fact. Cawthon v. Alcan Aluminum Corp., 599 So.2d 925, 928 (Miss.1991).
¶ 19. Inherent in making findings of fact is the issue of witness credibility. Shippers Exp. v. Chapman, 364 So.2d 1097, 1099 (Miss.1978). The Commission found incredible Rea’s evidence of a work-related back injury.
¶ 20. This Court finds in the record sufficient credible evidence to support the decision of the Commission, and accordingly affirms its decision.
¶21. This Court’s affirmance of the Commission’s decision renders moot Rea’s other issues.
¶ 22. THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.