IRVING, P.J.,
for the Court:
¶ 1. Isaac Parker appeals the decision of the Mississippi Workers’ Compensation Commission (Commission), which held that Parker did not suffer a loss of industrial use due to a work-related injury, and, therefore, was not entitled to permanent disability benefits.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. On March 23, 2011, while assembling wooden furniture frames at an Ashley Furniture assembly plant, Isaac felt a sharp pain in his hands. Isaac reported his pain to the plant nurse and his supervisor. The nurse scheduled Isaac an appointment with a medical group in New Albany, Mississippi. After seeing the physician at the medical group, Isaac told the plant nurse he would rather see Dr. Samuel Creekmore and the nurse approved. Dr. Creekmore subsequently sent Isaac to see Dr. Johnny Mitias, an orthopaedic surgeon at Ortho One. Isaac underwent a nerve study, which revealed that he suffered from work-related bilateral carpal tunnel syndrome. Dr. Mitias performed a *1082 bilateral carpal tunnel release, on July 13, 2011. Post surgery, Dr. Mitias prescribed physical therapy and braces.
¶ 4. Isaac claimed that the surgery did not help his pain. Dr. Mitias recommended that Isaac remain off work. At an office visit on August 25, 2011, according to his medical notes, Dr. Mitias released Isaac to return to light-duty work with a weight-lifting restriction of nothing greater than five pounds. Ashley Furniture placed Isaac on light duty, but Isaac continued to complain to the nurse that pain in his hand made it hard for him to perform his job. At his September 13, 2011 visit, Dr. Mitias continued Isaac’s physical therapy three times a week for two more weeks, and changed the weight restriction from five to ten pounds. On October 6, 2011, Dr. Mitias continued the work-hardening process, and increased Isaac’s lifting restriction to fifteen pounds. Dr. Miti-as further ordered Isaac to go to Baptist Memorial Hospital for an XRTS[1] test to determine if Isaac’s complaints were valid. According to the XRTS report, Isaac had magnified the severity of his symptoms. Dr. Mitias referred Isaac to Dr. Cooper Terry for a second opinion.
¶ 5. According to his medical records, Dr. Terry evaluated Isaac on November 7, 2011, and concluded that Dr. Mitias’ treatment was appropriate with respect to Isaac’s condition. Dr. Terry’s notes also indicate that he informed Isaac that it could take up to six months for the scar tenderness to resolve and for full-grip strength to return. Based on the XRTS results, Dr. Terry did not see a need for any work restrictions. At Isaac’s last visit with Dr. Mitias, on December 13, 2011, Dr. Mitias released Isaac to regular-duty work with no restrictions, and placed him on maximum medical improvement with a 3% impairment rating to each hand. Isaac testified that, even though he was released to regular duty, he had complained to the plant nurse of continued pain in his hand. Isaac’s employment with Ashley Furniture ended on January 2, 2012.[2] A few months after leaving Ashley Furniture, Isaac obtained part-time work at Kentucky Fried Chicken (KFC) as a cook. Isaac returned to Dr. Creekmore with the same symptoms. This time, Dr. Creekmore referred Isaac to Dr. Mohammed Akbik. Dr. Ak-bik ran additional diagnostic tests, and based on the tests results, he opined that Isaac had a recurrence of bilateral carpal tunnel syndrome and recommended another surgery. At this point, Isaac applied for permanent disability benefits, which Ashley Furniture denied.
¶ 6. Isaac filed a petition to controvert with the Commission, and an administrative judge (AJ) held a hearing on January 22, 2013. At the hearing, the parties agreed to the following stipulations:
(1) [Isaac] suffered a work-related bilateral carpal tunnel syndrome on March 23, 2011, in the course and scope of his employment as an assembler with Ashley Furniture;
(2) [Isaac]’s average weekly wage at the time of the injury was $612.82 with a compensation rate of $408.55 per week totaling $1,634.20;
(3) Temporary partial disability benefits were- paid from April 19th, 2011 to July 17th 2011 and from August *1083 15th, 2011 to December 11, 2011, totaling $5,619.44;
(4) Permanent partial disability benefits were paid for 8% to each extremity for twelve weeks at the rate of $408.55, totaling $4,902.60;
(5) On July 11, 2011, Dr. Johnny Mitias performed a bilateral carpal tunnel release;
(6) On December 13, 2011, Dr. Mitias assessed a three percent impairment rating to the left upper extremity with no restrictions;
(7) [Isaac] reached maximum medical improvement on December 21, 2011; and,
(8) [Isaac]’s choice of physician was Dr. Creekmore, who referred [him] to Dr. Mitias.
¶ 7. Furthermore, the parties introduced the following exhibits:
Exhibit 1- Medical records affidavit and medical records of Dr. Mohammed Akbik;
Exhibit 2- Medical records affidavit and medical records of Baptist Memorial Hospital;
Exhibit 3- Medical records affidavit and medical records of Mitias Ortho-paedics & Sports Medicine;
Exhibit 4- Medical records affidavit and medical records of Creekmore Clinic, PLLC;
Exhibit 5- Medical records affidavit and medical records of New Albany Medical Clinic; and,
Exhibit 6- Medical records affidavit and medical records of Dr. Cooper Terry.
¶ 8. At the hearing, Isaac testified that his hands were still weak, swelling, going numb, locking up, tingling, and cramping. According to Isaac, he had trouble using the frame gun and the crown gun needed to assemble the bed frames because his hands “would lock up and go numb and start tingling.” He testified that, post surgery, he still had difficulty holding on to things, and that he constantly dropped the frame parts and the guns.
¶ 9. Isaac explained that, as a cook at KFC, he had difficulty opening bags of frozen chicken. However, he could stir the batter and fry the chicken. Isaac also described an incident when another person had to help him open a soft drink because his grip was too weak to open it himself. He further explained that he had difficulty performing chores as a result of his condition. Isaac testified that he planned to have the surgery again as Dr. Akbik had recommended.
¶ 10. On August 30, 2013, the AJ entered an order finding that Isaac had failed to prove that he suffered an industrial loss of use of either extremity. Isaac filed an appeal with the full Commission. The full Commission affirmed the AJ’s decision on April 14, 2014, leading to the instant appeal.
DISCUSSION
¶ 11. In Smith v. Johnston Tombigbee Furniture Mfg. Co., 43 So.3d 1159, 1164 (¶ 15) (Miss.Ct.App.2010) (internal ■ citations and quotations omitted), this Court stated:
Our standard of review in actions arising under Workers’ Compensation Law is limited to determining whether the Commission erred as a matter of law or made findings of fact contrary to the overwhelming weight of the evidence. Reversal is proper only when a Commission order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law. Our supreme court has also stated the Commission will only be reversed for an error of law or an unsupportable *1084 finding of fact. When the Commission’s decision is supported by substantial evidence, then it must be upheld. This remains true even though we might have reached a different conclusion were we the trier of fact.
Here, the sole issue on appeal is whether the Commission erred as a matter of law or made findings of fact contrary to the overwhelming weight of the evidence by finding that Isaac did not suffer a loss of industrial use due to a work-related injury and, thus, was not entitled to permanent disability benefits.
¶ 12. In Herbert v. City of Horn Lake, 138 So.3d 943, 946 (¶ 10) (Miss.Ct.App.2013) (internal citation and quotations omitted), this Court explained:
In order to be deemed permanently totally disabled under Mississippi Code Annotated section 71-3-17(a) (Rev.2000), ... a claimant must show something more than an inability to return to the job existing at the time of injury. In order to determine that an employee is disabled, there must be a finding that the claimant could not obtain work in similar or other jobs and that the claimant’s unemployability was due to the injury in question. To demonstrate total disability, the claimant must show that [s]he has made a diligent effort, but without success, to obtain other gainful employment. Once the claimant has made a prima facie case of total disability, the burden shifts to the employer to show that the employee’s efforts were not reasonable or constituted a mere sham.
This Court has also held that “the ability to earn post-injury wages, even significantly diminished post-injury wages, defeats a claim of permanent total disability.” Hill v. Mel, Inc., 989 So:2d 969, 972 (¶ 14) (Miss.Ct.App.2008).
¶ 13. In this case, the AJ’s decision, which the full Commission upheld, specifically stated that “[Isaac] has failed to meet his burden of proof.” We agree. According to the record, there is no.dispute that Isaac suffered from bilateral carpal tunnel syndrome. Ashley Furniture and its insurance carrier, Wausau Underwriters Insurance Company, admitted to the injury, paid for Isaac’s medical needs, and provided temporary disability benefits to Isaac during his period of recovery.
¶ 14. The XRTS results confirmed that Isaac had magnified his symptoms. Nonetheless, Dr. Mitias requested that Dr. Terry review the results for a second opinion. Dr. Terry concurred with Dr. Mitias and wrote in his notes that there was “nothing further to offer in terms of treatment.” Isaac, on the other hand, stated that the surgery did not help his pain, and that he continued to suffer. Isaac offered his testimony, the results of Dr. Akbik’s diagnostic study, and Dr. Akbik’s records as evidence to contradict the opinions of Dr. Terry and Dr. Mitias. Nonetheless, it was stipulated that Isaac was released to regular-duty work with no restrictions in December 2011. And, as noted by the AJ, despite Dr. Akbik’s findings that Isaac still suffered from bilateral carpal tunnel syndrome, he too placed no work restrictions on him. In fact, Isaac had found other employment at KFC, albeit part-time employment. The record indicates that he handled the physical demands of the KFC job, and no reasons have been offered as to why he could not consider full-time employment at KFC. The law is clear a claimant’s ability to earn post-injury wages defeats a claim for permanent total disability benefits. After a review of the record, we cannot say that the Commission erred as a matter of law or that its findings were contrary to the overwhelming weight of the evidence. Accordingly, we affirm.
*1085 ¶ 15. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. The record does not shed light as to what an XRTS test is. Based on the physician's notes, presumably it measures actual grip strength, ■ and compares the results with the patient's complaints.

. Isaac stated that, based on a conversation with the plant manager, he believed he was terminated; however, Ashley Furniture denied it terminated Isaac's employment. Nonetheless, Isaac did not return to work at' Ashley Furniture.