WILSON, J.,
for the Court:
¶ 1. The Mississippi Workers’ Compensation Commission (Commission) found that Vince Hardaway suffered a job-related injury while employed at Howard Industries Inc. and awarded him temporary partial disability benefits and permanent partial disability benefits. Howard Industries appeals the Commission’s decision. The primary issues that-Howard Industries raises, concern conflicting testimony about the nature of Hardaway’s job duties and conflicting medical evidence. Such conflicts in the evidence are resolved by the Commission, not this Court, provided that substantial evidence supports the Commission’s findings. The Commission’s decision in this case was based on substantial evidence, and Howard Industries’ other arguments lack merit. Thus, we affirm.
*1260 FACTS AND PROCEDURAL HISTORY
¶ 2. Hardaway began working for Howard Industries in September 2008 as a “lacer” assembling transformer coils and cores. Two months later, he moved to the assembly department, where he worked as a “set-up person.” In this role, he located various sized coils, cores, pans, and clamps needed to complete a transformer.- He would place these items on a board, which he then pushed down a roller bed for the lacers to use in the assembly of the transformers. This act of pushing the loaded boards became the basis of Hardaway’s claim that he had suffered a work-related injury, and the nature of and physical exertion required to perform the task were the subject of conflicting evidence before the Commission.
¶ 3. In July 2009, Hardaway experienced what he described as severe shocks and numbness in his fingers and hands, which he reported to his supervisor. Hardaway first saw a company nurse, who sent him to Dr. Joseph Danford at the Hattiesburg clinic, who referred him to Dr. Steven Nowicki of the Laurel Bone and Joint Clinic. Dr. Nowicki diagnosed Hardaway with bilateral' carpal tunnel syndrome, began Hardaway’s treatment, and restricted Hardaway to light-duty work. In September 2009, after Hardaway had reported no improvement in his symptoms, Dr. Now-icki performed surgery — a left carpal tunnel release — and ultimately released Hard-away to full duty on March 25, 2010. Thereafter, Hardaway continued to work at Howard Industries.
¶ 4. Hardaway returned to Dr. Nowicki in May 2010, complaining of severe shocks in his right hand. Dr. Nowicki resumed treatment and again restricted Hardaway to light-duty work. On August 11, 2010, Dr. Nowicki performed a right carpal tunnel release on Hardaway. On August 24, 2010, Dr. Nowicki released Hardaway to return to light-duty work, which he did, until he was fired for insubordination on October 6, 2010. Even after his termination, Hardaway continued treatment for bilateral carpal tunnel syndrome, and Hardaway reached maximum medical improvement, per Dr. Nowicki, as of January 13, 2011. Dr. Nowicki assessed Hardaway with a thirteen percent permanent medical impairment to each' upper extremity (wrist) and permanent work restrictions against repetitive grasping, gripping, or using knives or scissors and more than occasional lifting of more than two or three pounds. [1]
¶ 5. Hardaway filed his petition to controvert on January 18,’ 2011, alleging injuries to both of his upper extremities. Howard Industries answered Hardaway’s petition by claiming that it could not admit or deny Hardaway’s injury was work-related; -however, it agreed to pay Hardaway fifty-two weeks of permanent partial disability benefits, which the Commission permitted to be paid in a lump sum. Howard Industries ultimately contested that Hard-away’s injuries were work-related, and it denied liability for further payments.
¶ 6. Hardaway saw Dr. Rahul Vohra in April 2011 and June 2011 for an independent medical examination. Dr. Vohra examined Hardaway and his medical records, and- he agreed that Hardaway had achieved maximum medical improvement. Dr. Vohra assessed a five percent permanent medical impairment to each upper extremity, and he restricted Hardaway from work that required “repetitive or continuous gripping or repetitive or continuous wrist flexion and extension.” During his deposition, Dr. Vohra testified that whether Hardaway’s work activities caused or contributed to his-injuries depended on the frequency and forcefulness of the wrist extensions and flexion his job involved.
*1261 ¶7. At the request of Howard Industries, Hardaway was also examined by Dr. Howard Katz. Dr. Katz examined Harda-way on July 29, 2011, and reviewed his medical records. • Dr. Katz opined that Hardaway’s carpal tunnel syndrome was not related to his work duties and was more likely caused by Hardaway’s obesity and gout. He concluded that Hardaway had a four percent permanent medical impairment to each upper extremity,-. and Hardaway should wear carpal, tunnel splints while sleeping and when repetitively stressing his upper extremities to prevent hyperextension and ■ hyperflexion. Dr. Katz also attended the hearing before the administrative judge (AJ) and testified that, after hearing the evidence presented, his opinion remained unchanged.
¶ 8. After a contentious prehearing discovery phase, Howard Industries and Hardaway appeared before the AJ for evi-dentiary hearings on July 17, 2012, August 7, 2012, and September.20, 2012, The AJ entered an order on July 15, 2013, awarding Hardaway temporary partial disability benefits for the time periods of July 9-10, 2009; July 24 to August 5, 2009; and August 23 to. October 6, -2010. The AJ also awarded Hardaway permanent partial disability benefits for sixty weeks at the rate of $414.29 per week due to the “industrial loss of use of [Hardaway’s] left upper extremity,” and he was awarded the same for his right upper extremity, with the “awards to run ,.consecutively[.]”[1] The Commission affirmed the-AJ’s order and adopted its findings, except as it related to the award of temporary partial disability. The Commission found that, on the facts of this case, the proper rate of temporary partial disability benefits was “sixty-six and two-thirds percent (66 2/3%) of the difference between [Hardaway’s] stipulated average weekly wage of $721.80 and the wages actually earned” by Hardaway during the relevant periods.
¶ 9. Howard Industries raises five issues in its'hppeal, some of which involve multiple subissues, which we summarize as follows: (1) whether the Commission’s finding that Hardaway suffered a compensable injury was based on substantial evidence; (2) whether the Commission’s award of temporary partial disability benefits was based on substantial evidence and whether the Commission properly calculated those benefits; (3) whether the- Commission’s finding that Hardaway has a permanent medical impairment is based on substantial evidence; (4) whether opposing counsel’s contacts with a nonmanagerial Howard Industries employee warranted sanctions or some other action by the AJ or the Commission; and (5) whether Howard Industries was unfairly limited in its ability to examine witnesses, and whether the AJ and Commission abused their discretion by not admitting into evidence the claimant’s prehearing deposition. We address these issues in turn below. Finding no reversible error, we affirm.
STANDARD OF REVIEW
¶ 10 In workers’ compensation cases, “[t]his Court’s review is limited to determining whether the Commission’s decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated ... constitutional or statutory rights.... [T]he Commission is the ultimate fact-finder and judge of the credibility of witnesses;- therefore, we may not reweigh the evidence that was before the Commission.” Pulliam v. Miss. State Hudspeth Reg’l Ctr., 147 So.3d 864, 868 *1262 (¶ 16) ' (Miss.Ct.App.2014) (citations and quotation marks omitted). “When the Commission’s decision is supported by substantial evidence, ... it must be upheld. This remains true even though we might have reached a different conclusion were we the trier of fact.” Parker v. Ashley Furniture Indus., 164 So.3d 1081, 1083-84 (¶ 11) (Miss.Ct.App.2015) (quoting Smith v. Johnston Tombigbee Furniture Mfg. Co., 43 So.3d 1159, 1164 (¶ 15) (Miss.Ct.App.2010)). “Furthermore, ‘we are reminded that workers’ compensation law is to be liberally and broadly construed, resolving doubtful cases in favor of compensation so that the beneficent purposes of the act may be accomplished.’ ” Prentice v. Schindler Elevator Co., 13 So.3d 1258, 1260-61 (¶ 7) (Miss.2009) (quoting McCrary v. City of Biloxi, 757 So.2d 978, 982 (¶ 18) (Miss.2000)).[2]
ANALYSIS
I. Compensability
¶ 11. Howard Industries' first argues that the Commission’s finding that Hardaway’s carpal tunnel syndrome arose out of his employment was not based on substantial evidence.[3] In support of this argument, Howard Industries focuses on Dr. Katz’s testimony that Hardaway’s carpal tunnel syndrome was the result of his gout and obesity, not his work duties, and the testimony of Hardaway’s coworker, Melvin Brown, that Hardaway spent most of his time gathering and scanning items as opposed to actually pushing the units. Howard Industries also relies heavily on a video that it created that supposedly demonstrates Hardaway’s job duties. Howard Industries argues that this evidence proves that Hardaway did not engage in repetitive movements, nor did he have to hyperextend his hands forcefully to push the units. Relying on Fresenius Medical Care v. Woolfolk ex rel Woolfolk, 920 So.2d 1024 (Miss.Ct.App.2005), Howard Industries also argues that the Commission should not have relied on other physicians’ medical opinions linking Hardaway’s carpal tunnel syndrome to his job duties because those opinions were based on inaccurate and flawed information concerning the nature of those duties,
¶ 12. In relevant part, the Commission affirmed ' and adopted' the AJ’s findings and conclusions, finding them to be “overwhelmingly” supported by the record. In her order, the AJ observed: “Not surprisingly, the evidence is conflicting regarding the amount' of time and force that' was required to push the coils and cores on the roller bed generally' and by [Hardaway] specifically,” However, evidence was presented, and the AJ found, that Hardaway’s job required him to push seventy to ninety units a day, with units often weighing over a thousand pounds; that he typically pushed multiple units at a time; that units sometimes became “snagged” at points along the line; that certain loads — in particular, heavier loads — could be difficult to push and maneuver along the roller bed, especially at certain “trouble spots” in the line; that rust and other issues created resistance that required Hardaway and his coworkers to forcefully “manhandle” heavy units into the lacers, often with great diffi *1263 culty. The'AJ found that these duties required Hardaway to “occasionally but forcefully.grip[], push[,] and pull[] very heavy loads at work” (Emphasis added). The AJ’s findings in this:regard were supported by substantial evidence — not only Hardaway’s own testimony but also in various respects by the testimony of Melvin Brown, Hardaway’s supervisor, and other Howard Industries employees.
¶ 13. Howard Industries argues that these findings should be overturned-because it presented a* video that, it says, demonstrates that Hardaway’s job duties were not .strenuous. However, Melvin Brown himself testified that the video depicted only the “easy part” of the job, not its more difficult and strenuous aspects, described above. Given . Brown’s testimony casting doubt on the video, the Commission certainly was not required to accept it uncritically as a complete and accurate representation of Hardaway’s job duties.
¶ 14. The AJ further found that the forceful pushing and pulling required by Hardaway’s job caused or contributed to his bilateral carpal tunnel syndrome. In reaching this conclusion, the AJ relied on Dr. Nowicki, the orthopedic surgeon who treated Hardaway twenty-seven times between July 2009 and January 2011. Dr. Nowicki attributed Hardaway’s carpal-tunnel-syndrome diagnosis to his work duties. The AJ found Dr. Nowicki’s treatment records were the most comprehensive and detailed medical evidence in the record due to the number of times he examined and treated Hardaway for both carpal tunnel syndrome and gout. Dr. Nowicki concluded that Hardaway’s carpal tunnel syndrome was work-related and not a result of gout. Dr. Danford also treated Harda-way for both carpal tunnel syndrome and gout, and he too linked-Hardaway’s carpal tunnel syndrome to his work duties. And Dr. 'Vohra, who conducted an independent medical examination of Hardaway, testified that “occasional forceful gripping or forceful wrist extension or wrist flexion” was a mechanical risk factor for carpal tunnel Syndrome and, therefore, that whether Hardaway’s work caused or contributed to his carpal tunnel syndrome depended on the “force and the frequency ... of gripping that he did in his job.”
¶ 15. To be sure, Dr. Katz disagreed with Dr. Nowicki and Dr. Danford and opined that Hardaway’s carpal, tunnel syndrome was related to gout, not work. But the AJ and the Commission found Dr. Nowicki and Dr. Danford to be more persuasive because they had treated. Harda-way over extended periods-of time for both gout and carpal tunnel syndrome and because of Dr. Nowicki’s relevant speciality in orthopedic surgery. It is well settled that “when examining conflicting opinions by medical experts, ‘we will not determine where the preponderance of the evidence lies[,] ... the assumption being that the Commission^] as trier of fact, has previously determined which evidence is crédi-ble, has weight, and’which is not.’” Int’l Staff Mgmt. v. Stephenson, 46 So.3d 367, 373-74 (¶ 25) (Miss.Ct.App.2010) (citation omitted) (quoting Hardaway Co. v. Bradley, 887 So.2d 793, 796 (¶ 12) (Miss.2004)). Because the ' Commission’s finding was supported by substantial evidence, Dr. Katz’s disagreement is not a basis for reversal.
¶ 16. Finally, Howard Industries’ reliance on Fresenius, supra, is misplaced. In Fresenius, a non-treating expert opined that a nurse’s aneurysm was the result a stressful phone call from a patient that caused her blood pressure to elevate. We held that the expert’s opinion failed to establish causation because there was “no substantial evidence supporting a critical fact assumed and relied upon by [the expert] — that the call from the patient ... *1264 emotionally upset [the nurse] and induced stress in her.” Fresenius, 920 So.2d at 1029 (¶ 19). Howard Industries argues that the same reasoning applies here based on a statement in Dr. Danford’s July 2009 treatment notes that Hardaway “relate[d] that he pushe[d] items that weighed in excess of 400 pounds on rollers all day long.” Howard Industries emphasizes the phrase “all day long” and argues that this is a critical, erroneous assumption on which Dr. Danford and Dr. Nowicki relied and, therefore, that their opinions must be disregarded. This argument lacks merit. As recounted above, there was ample evidence, which the AJ and the Commission found credible, that Hardaway’s job required him to push heavy heavy loads seventy to ninety times per day, many weighing well in excess of 400 pounds. There is, in contrast, no evidence that Dr. Danford and Dr. Nowicki were under a misimpression that Hardaway pushed such loads continuously and without ceasing “all day long.” Thus, Fresenius is inapposite. The Commission’s finding that Hardaway’s work duties caused or contributed to his carpal tunnel syndrome was supported by substantial evidence.
II. Temporary Partial Disability Benefits
¶ 17. Howard Industries next argues that the Commission “erred as it .determined that Hardaway was entitled to temporary partial disability [benefits] based on the difference in his pre-injury average weekly wage and his actual post-injury wages[,] notwithstanding there was a reduction in overtime for all workers due to downturn in the economy.” As noted above, Hardaway’s partial disability payments relate to three periods — July 9-10, 2009; July 24 to August 5, 2009; and August 23 to October 6, 2010 — during which he was restricted to light-duty work at Howard Industries. We find that the Commission’s calculations are supported by substantial evidence and therefore affirm.
¶ 18. Temporary partial disability payments are set by statute at two-thirds “of the difference between the injured employee’s average weekly wages before the injury and his wage-earning capacity after the injury in the same or other employment.” Miss.Code. Ann. § 71-3-21 (Rev.2011). The employee’s average weekly wage is determined based on the fifty-two weeks immediately preceding his injury, id. § 71-3-31, which in this case the parties stipulated to be $721.80. Further, in a case such as this one, the Commission may employ evidence of actual post-injury earnings as a rebuttable presumption of'post-injury wage-earning capacity. See Nissan N. Am. v. Short, 942 So.2d 276, 280 (¶ 17) (Miss.Ct.App.2006). Either party may rebut the presumption by relevant evidence showing that post-injury earnings are not an accurate reflection of post-injury earning capacity. See id.
1119. Here, Hardaway earned virtually no overtime pay during his periods of temporary partial disability, whereas prior to his injury he regularly earned substantial overtime pay. This difference explains virtually all of the decrease in his pay during these periods. The AJ and Commission found that Howard Industries did not assign Hardaway overtime work because of his injury and restriction to light-duty work, and this conclusion finds support in the evidence.
¶ 20. On appeal, Howard Industries argues that the Commission should have taken into account a general downturn in the economy, which, Howard Industries claims, resulted in an overall decrease in overtime available to employees in Harda-way’s department. While there is some evidence to support Howard Industries’ factual claim, the Commission properly found that it did not alter the calculation of *1265 disability benefits on the particular facts of this case. The alleged posi-injury downturn and overall reduction in overtime obviously has no impact on the proper calculation of Hardaway’s “average weekly wages before the injury.” Miss.Code. Ann. § 71-3-21 (emphasis added). Nor, in this case, shoulid it affect the proper calculation of “his wage-earning capacity after the injury in the same or other employment.” Id. (emphasis added). If, as the Commission found, Hardaway’s injury precluded him from working overtime, then the relative availability or unavailability of such overtime work was irrelevant to his post-injury wage-earning capacity. Moreover, even assuming its relevance, the evidence that Howard Industries offered of fluctuations in overtime hours during Hardaway’s relatively brief periods of temporary partial disability was not so clear or overwhelming as to compel the Commission to modify its calculations. At the end of the day, Howard Industries presented no evidence that Hardaway could have earned more “in the same or other employment.” Miss.Code. Ann. § 71-3-21. Accordingly, we affirm, as based on substantial evidence, the Commission’s determination- as to the amount of temporary partial disability payments to which Hardaway is entitled.
¶21. Howard Industries also argues that Hardaway’s failure to conduct a job search during these periods should disqualify him from receiving any temporary partial disability benefits. “What constitutes a reasonable effort to obtain employment is a matter not of easy definition, and what might be a reasonable effort in one situation might not be so in añóther.” Lifestyle Furnishings v. Tollison, 985 So.2d 352, 361 (¶ 29) (Miss.Ct.App.2008). Here, however, we have little difficulty affirming the Commission’s determination that it was reasonable for Harda-way to simply return, to light-duty work at Howard Industries rather than looking for additional or different work elsewhere.
¶22. As noted above, Hardaway received temporary partial disability benefits fife* the three periods in 2009 and 2010 that lasted a combined total of only about eight weeks. Hardaway remained an employee of Howard Industries arid returned to work, albeit with restrictions, during these periods. As discussed above, the Commission found that Hardaway was not as-. signed overtime during these periods because of his injury. Given this finding, Howard Industries’ argument must be that Hardaway was obliged to search for a second job to replace the overtime hours that it would no longer permit him to work because of his injury. The Commission’s rejection of this argument was neither arbitrary nor capricious. Its finding that Hardaway’s voluntary return to an accommodated position at Howard Industries rendered a further job search unnecessary is supported by substantial evidence.
III. Permanent Partial Disability Benefits
¶23. The AJ’s order, which the Commission adopted and affirmed in relevant part, found that Hardaway suffered a thirty percent industrial loss of use of each of his upper extremities and that he was entitled to permanent partial disability compensation on that basis. Howard Industries argues that' this finding is not supported by substantial evidence. The crux of its argument is that “Hardaway’s job search efforts were not reasonable!!;] therefore, the AJ erred in awarding thirty percent loss of use to each upper extremity arid the ruling should be reversed.”
¶24. Mississippi Code Annotated section 71-3-17 (Supp.2014) provides two ways for a claimant seeking compensation for loss of a scheduled member. Subsection (a) applies to claims for permanent *1266 total disability, whereas subsection (c) applies when, as in this case, the claimant seeks permanent partial disability benefits. Further, under subsection (c), a claimant may be compensated either “based on the degree of functional loss” of the scheduled member (i.e., the claimant’s medical impairment rating) or “based on the industrial loss of use of the member” (i.e., the degree to which the claimant is limited in the performance of his usual employment), whichever is greater. Cole v. Ellisville State Sch., 59 So.3d 612, 617 (¶ 23) (Miss.Ct.App.2010). Subsection (c) bases compensation “solely on the degree of disability to" the scheduled member and does not take into account the effect of that-disability on the claimant’s actual ability to earn wages in [a] post-injury condition Id. at 616 (¶ 22) (emphasis added) (quoting Ard v. Marshall Durbin Co., 818 So.2d 1240, 1245 (¶ 25) (Miss.Ct.App.2002)).
¶25. For this reason, this Court has recognized that there is a difference between the job-search requirement for a claim for permanent total disability benefits under subsection (a) and the job-search requirement for a claim for permanent partial disability benéfíts under subsection (c). A claim made under subsection (a) is subject “to the ‘most 'rigorous’ test for disability, which requires convincing medical proof of total disability and a legitimate job search for suitable employment.” Eaton Corp. v. Brown, 130 So.3d 1131, 1136 (¶ 26) (Miss.Ct.App.2013); Ksee also Cole, 59 So.3d at 617 (¶ 24) (“Whether a claimant diligently, but unsuccessfully, sought other employment is typically a consideration, in permanent-total disability cases, which [the claimant] is not seeking.”).' In contrast, “the fact that [a claimant] did not seek employment'with [her former employer] or any other company is not conclusive of whether she was entitled to permanent-partial disability benefits for the industrial-loss of use of [a scheduled member].” Cole, 59 So.3d at 617 (¶ 24). When, as in this case, the -claimant seeks permanent partial disability benefits' for “industrial loss of use” rather than a “functional loss,” his job search may be relevant, but, again, it is hot “conclusive.” See id. at 617-16 (¶¶ 22, 24).
¶ 26. The AJ’s order, which, the Commission adopted in relevant part, summarized the evidence she considered in assessing Hardaway’s industrial loss of use, including, inter alia, the permanent restrictions placed on Hardaway by not only Dr. Nowicki but also Drs. Vohra and Katz; Hardaway’s inability to sustain full, unrestricted work at Howard. Industries following his two surgeries; Hardaway’s work history; the testimony of Hardaway’s vocational expert that his injuries would exclude him from a number of jobs for which he was otherwise qualified; the report of Howard Industries’ vocational expert identifying a number of lower-paying job fields that he believed Hardaway could enter notwithstanding-his work, restrictions; and Hardaway’s own testimony of ongoing disabling pain in his hands. Howard Industries .argues that, despite this evidence, Hardaway’s failure to conduct a prompt and diligent job search conclusively disproves his industrial loss of use. Specifically, Hardaway failed to conduct any documented job search for a year and a half after he was terminated by Howard. Industries and reached maximum medical improvement. And, even then, his job search appears to have been abbreviated and likely motivated by his upcoming workers’ compensation hearing. Howard Industries places particular emphasis on Hardaway’s failure to apply for a job as a disc jockey or radio announcer, a .job he apparently held for a year or so several years prior to his injury.
¶ 27. Howard' Industries’ ■ arguments are reasonable ones that were appropriately addressed to and-considered by the *1267 AJ and the Commission. However, the Commission found Hardaway’s contrary evidence of an industrial loss of use preponderated. As stated above, “the Commission is the ultimate fact-finder and judge of the credibility of witnesses; therefore, we may not reweigh the .evidence that was before the Commission.” Pulliam, 147 So.3d at 868 (¶ 16). When, as in this case, “the Commission’s decision is 'supported by substantial evidence, it must be upheld,” even if “we might have reached a different conclusion were we the trier of fact.” Parker, 164 So.3d at 1083-84 (¶ 11) (quoting Smith, 43 So.3d at 1164 (¶ 15)). Howard Industries’ arguments go to the weight of the evidence presented, not its sufficiency, and, therefore, are not a basis for reversal. See generally Cole, 59 So.3d at 613 (holding that claimant was entitled to benefits based on an industrial-loss-of-use percentage in excess of her medical impairment -rating despite her failure to search for a job).
¶ 28. Finally, Howard Industries argues that Hardaway’s award should have been limited to the functional/medical impairment ratings assessed by the various physicians who testified or treated him, .the highest of these being thirteen percent by Dr. Nowicki. However, this argument also lacks merit. An industrial loss of use “refers to the manner in which a ,.. functional/medical disability affects the claimant’s ability to perform the duties of his employment. In the event that a claimant’s functional/medical disability rating varies from a claimant’s industrial/occupational disability rating, the claimant is entitled to the higher of the two ratings.” Union Camp Corp. v. Hall, 955 So.2d 363, 372 (¶¶ 41-42) (Miss.Ct.App.2006). Here, for the reasons discussed above, the Commission’s finding that Hardaway’s industrial loss of use exceeded his medical impairment ratings was supported by substantial evidence and," for that reason, must be affirmed.
IY. Ex Parte Communication
■ ¶ 29. Howard Industries next argues that Hardaway’s attorneys had improper ex parte contact with Melvin 'Brown, an hourly employee at Howard Industries and a former coworker of Hard-away whose testimony is discussed above. Howard Industries alléges that the contacts violated Mississippi Ride of Professional Conduct 4.2. It also alleges that questioning of Brown; both ex parte and at the hearing' before the AJ, violated Howard Industries’ attorney-client privilege.
¶ 30. Brown stated in an affidavit that on August 4, 2012, Hardaway’s attorney telephoned him and “asked [Brown] about what [Howard Industries’ attorney] asked [him] and did not ask [him] about the video, as well as what [Brown] told [Howard Industries’ attorney] in response.” Hardaway’s attorneys denied asking Brown to reveal the content of any privileged communications. At the hearing before the AJ, after Brown testified that the video did not show the most difficult parts of his job, Hardaway’s attorney asked him, “Did you tell [Howard Industries’ attorney] that?” Brown answered in the affirmative. There was no objection to, this question or testimony.
¶ 31. This issue was litigated extensively before the AJ and the Commission. The day prior to the phone -call about which Howard Industries complains, the AJ had entered an order permitting the ex parte contact on the ground that Brown had no managerial responsibility, his actions could not be imputed to Howard Industries, and his statements could not constitute an admission by Howard Industries. The AJ’s order limited communication to “the physical demands of [Brown’s] work on the line, the amount and availability of overtime [Brown] worked on the line, arid [Brown’s] observations of [Harda-way’s] relationship with his former super *1268 visor.” Howard Industries petitioned the Commission for interlocutory review of the AJ’s order (which was denied), later sought sanctions based on the same contact (which were denied), and reasserted the issue in its appeal to the Commission. Reviewing the AJ’s order and other evidence in the reeord, the Commission found no evidence of any ethical violation or violation of privilege.
¶ 32. The AJ correctly recognized that not all ex parte contacts with low-level employees are prohibited. See Miss. R. Profl Conduct 4.2 cmt.; White v. Ill. Cent. R.R., 162 F.R.D. 118, 119-20 (S.D.Miss.1995). Further, the Commission’s implicit finding that there was no deliberate attempt to elicit privileged communications is supported by substantial, if conflicting, evidence. As such, the Commission’s refusal to impose sanctions certainly was not an abuse of discretion, much less arbitrary and capricious. These observations are more than sufficient to dispose of this issue oh appeal because Howard Industries fails to articulate how Brown’s brief testimony on this issue or telephone conversation with opposing counsel caused it any prejudice whatsoever. Rather, it merely asserts that “the AJ and the Commission erred in not severely sanctioning Claimant’s attorney.” As we have already stated, that argument lacks merit, and this issue provides no basis for granting Howard Industries any relief on appeal. See, e.g., Hodgins v. Philadelphia Pub. Sch. Dist., 966 So.2d 1279, 1285 (¶ 23) (Miss.Ct.App.2007) (citing M.R.C.P. 61) (any alleged error is harmless where there is “no showing of prejudice”)..
V. Time Restriction at Hearings
1133. In 'its final issue, Howard Industries argues that the AJ unfairly limited its presentation of its case in general and its cross-examination of Hardaway in particular. Specifically, Howard Industries alleges'that on the third and final day of the evidentiary hearing, the AJ limited its cross-examination of Hardaway and its direct examination of its own witnesses to forty-five minutes per witness even though Hardaway had not been subject to any similar restriction during his presentation of his case to that point. Under .this same argument, heading, Howard Industries also argues that it was error not to admit Hardaway’s deposition into evidence because Hardaway’s deposition would have shown.that his testimony at the hearings was not credible.
¶34, As the AJ and Commission observed, both the discovery phase and the evidentiary hearings in this matter were unnecessarily lengthy and contentious, for which both sides are to blame.[4] It was Howard Industries that first suggested, on the second day of the hearing, that a time limit be imposed on the remaining witnesses. The AJ acknowledged Howard Industries’ suggestion but did not impose any time restriction at that time. It is unclear when the alleged forty-five minute time limit was first discussed. The parties have not provided us with a citation to its *1269 first mention in the record, and it may-have been off the record. It appears that it was discussed before Hardaway testified on direct, as his attorney asked the AJ for a “half-way mark notice” and was informed that he had used twenty-one minutes of his time. Later he was told that he had ten minutes left, and it appears that he completed direct within that amount of time. Hardaway’s direct examination covers approximately forty-five pages of the transcript.
¶ 35. During Hardaway’s cross-examination, after an objection by Hardaway’s attorney, the following exchange occurred between the AJ and counsel for Howard Industries (HI):
AJ: We’ve been over this, and you have 15 minutes....
HI: Your Honor, may I have the time it takes me to put on my ease because [Hardaway] didn’t have any limitations on two days" of testimony. I think it is really unfair—
AJ: We’ll see how you are, but let’s try to get this done in 15 minutes.
[[Image here]]
HI: Really, Your Honor, I ought to be entitled to put my case on.
AJ: You are.
[[Image here]]
AJ: But we’ve already been over at least twice, what you just went over.
Several transcript pages later, Hardaway’s counsel asserted that Howard Industries’ time had expired. Rather than enforcing any time limit, however, the AJ told counsel for Howard Industries that he had five more minutes. Still later, Hardaway’s counsel asserted that this additional five minutes had expired. However, the AJ again allowed counsel for Howard Industries to continue. Cross-examination proceeded for at least several more minutes, at which point the AJ took a ten-minute break for counsel to review his notes and then permitted five more minutes of questioning. Cross-examination finally ended several transcript pages later when counsel informed the AJ, without any additional prompting, that he had no further questions. Hardaway’s cross-examination covers approximately fifty-five pages of the transcript. His redirect was brief. Thus, from what we are able to discern, Harda-way’s cross appears to have lasted longer than direct and redirect combined, and no time limit was ever enforced. Howard Industries was allowed to exceed the alleged time limit with the next witness as well, and we have found no indication in the record that the alleged limit was ever enforced with respect to any witness. Indeed, as noted above, we cannot even tell from the record what time limit, if any, was articulated to begin with. Whatever it was, it appears to have been more of a suggestion than a rule.
¶36. The. Commission concluded that this issue was without merit because, there was no showing that.the timé limit was enforced or that Howard Industries suffered any prejudice. We agree. Howard Industries was afforded sufficient time to cross-examine Hardaway and to present its case. From the record, we can discern no error, much less one that affected Howard Industries’ substantial rights or violated due process.
¶37. Finally, Howard Industries advances a related argument that the AJ erred in marking Hardaway’s prehearing deposition for identification but not admitting it into evidence. In its brief, Howard Industries alleges that “[t]he AJ refused to admit the deposition” and that “she specifically stated it would be admitted for identification purposes only but she was not going to read it” or “said she had no intention of reading it.” However, Howard Industries provides no record citation for the AJ’s ruling or these alleged comments, and we have been unable to locate *1270 them in our own review of the record.[5] Accordingly, the issue is waived. See Conley v. State, 790 So.2d 773, 784 (¶ 28) (Miss.2001) (citing M.R.A.P. 28(a)(6)). Moreover, Howard Industries also failed to raise this issue in its petition review to the Commission and failed to move to introduce the deposition into evidence pursuant to Commission Rule 2.9,[6] which authorizes motions to introddce' additional evidence on review before the Commission. Accordingly, the issue is waived for this reason as well. See Garcia v. Super Sagless Corp., 975 So.2d 267, 270 (¶ 10) (Miss.Ct.App.2007).
CONCLUSION
¶38. The Commission’s decision' to award Hardaway temporary partial 'disability benefits and permanent' partiál disability benefits for a compensable work-related injury was based on substantial evidence. The other issues raised by Howard Industries lack merit. Finding no reversible error, we affirm.
If 39. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL,- FAIR AND -JAMES, JJ., CONCUR.

. The AJ’s initial order awarded Hardaway benefits at the rate of $481.20 per week; however, the AJ amended her order on July 25, '2013, to reduce the amount to $414.29 per week, which was the 2009 statutory maximum.

. This principle has been legislatively abolished but only for injuries occurring on.or after July 1, 2012. See 2012 Miss. Laws Ch. 522 (S.B.2576), §§ 1 & 11.

. Our workers’ compensation law provides compensation for injuries "arising out of and in the course of employment without regard to fault which results from an untoward event or events, if contributed to or aggravated or accelerated by the employment in a significant manner.” Miss.Code, Ann. § 71-3-3(b) (Rev.2011). The term "arising out of employment” simply means there is a "causal connection between the employment and the injury.” Singley v. Smith, 844 So.2d 448, 453 (¶ 20) (Miss.2003),

. By way of example only, in a March 2012 order denying a petition for review filed by Howard Industries from a discovery order entered by the AJ, the Commission bemoaned “the inexcusable failure by attorneys for both parties to have already completed discovery on their own without the [AJ] having to enter the [ojrder she did.” The Commission found that the order was "so parental in nature, that it clearly demonstrate[d] how the attorneys involved ha[d] forsaken their clients' interests in favor of perpetuating a battle against one another.-’ The’ Commission encouraged the AJ “to consider the imposition of sanctions against one or both of the parties’ attorneys .,. based on what appears to be an unnecessary prolongation of the discovery process, 'and in turn a senseless delay of the proceedings.”

. On the first day of the hearing, before any witness took the stand, the deposition was marked for identification, but there was no, on-the-record ruling as to its admissibility. Howard Industries does not cite, nor could we find, any other reference to it in the transcript.

. See Rule 2.9 under title 20, part 1, chapter 2 of the Mississippi Administrative Code (available at http;//www.sos,ms.gov/ACCode/ 00000107c.pdf, at p. 20).