586 So.2d 823 (1991)
GEORGIA PACIFIC CORPORATION
v.
Louis TAPLIN.
No. 90-CC-0415.
Supreme Court of Mississippi.
September 18, 1991.
*824 Robert G. Germany, Cothren & Pittman, Jackson, for appellant.
Clyde Ratcliff, McComb, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION
This Workers' Compensation Commission (the Commission) decision arises on the appeal of the employer, Georgia Pacific, from the judgment of the Amite County Circuit Court. Georgia Pacific contends that the administrative judge, Commission, and circuit court erred in holding that Taplin's *825 claim was not barred by Miss. Code Ann. § 71-3-35(1) (Supp. 1990), since Taplin filed no application for benefits with the Mississippi Workers' Compensation Commission within two years from the date of his accident. Taplin asserts a latent discovery of a compensable injury.

A. Facts
Taplin has an 11th-grade education and had previously worked in an unlicensed capacity as a plumber, electrician, auto mechanic, and front-end loader and bulldozer operator. He worked for Georgia Pacific Corporation at the time of this injury and had been an employee of Georgia Pacific since 1972. Taplin was injured while working on an elevated platform from which he operated a Hy-Hoe, which pulls logs from a hot-water vat. Part of the machine structure fractured and the platform began to tip; in trying to jump clear, he was caught by a railing and landed on his head and shoulder on the metal, concrete-supported platform below. Taplin was off work August 8-10, returning on August 11. During Taplin's absence he was hospitalized and diagnosed as having sprained his neck. The Georgia Pacific personnel manager testified under cross-examination that, on August 18, 1983, he received a medical report from a Dr. Field linking the claimant's condition to the August 8 fall.
Taplin continued to be treated for neck and back pain. Because he continued to experience pain, although his doctor said he was "all right," he visited a back specialist who also told the claimant "there wasn't anything wrong". Taplin consulted yet a third physician who treated the claimant and referred him to Dr. Donald Fonte. The claimant was treated by Dr. Fonte from the beginning of April through June of 1985, during some of which time the claimant was absent from work. According to Dr. Fonte, the claimant's condition was caused by his August 8, 1983, accident, but his degenerative disk condition would not have been discoverable by the claimant until at least a year after the accident. Dr. Fonte initially prescribed traction and muscle relaxers.
After May of 1985, the claimant continued to see Dr. Fonte, and in August of 1985, Dr. Fonte performed surgery on the claimant's neck vertebrae. On September 4, 1985, the employer's personnel manager received a letter from Dr. Fonte indicating that the claimant had linked his condition to the 1983 fall.
After surgery, Taplin testified that he attempted to return to work several times but was refused work because he had not fully recovered. Dr. Fonte sent periodic reports to Georgia Pacific indicating the claimant's ability to work. On January 15, 1986, the employer asked Taplin to come to the personnel office; when he did, the employer terminated the claimant's employment based on a physical disqualification  a pre-existing back condition which had been identified in the claimant's 1972 employment physical examination. According to the personnel manager, while this condition did not affect the claimant's ability to perform his work at Georgia Pacific, it disqualified him from being employed by Georgia Pacific.
The claimant testified that, following his termination by the employer, he applied for eight jobs, but without filling out a written application for any of them. Taplin testified on cross-examination that his inability to secure full-time employment was due to lack of job openings, not his lessened physical ability. He testified that neither the jobs for which he had unsuccessfully applied nor the part-time jobs he had secured paid seven dollars per hour.
Prior to August 8, 1983, the claimant had not experienced any neck problems. At the time of the administrative hearing, he testified to and indicated restrictions in his neck movement which limited his ability to perform jobs he had previously performed, although he admitted that other, unrelated health problems also interfered.
On August 9, 1985, the claimant filed a Petition to Controvert against the employer, Georgia Pacific Corp., self-insured. The claimant demanded penalties for untimely payment of compensation and medical benefits. The employer answered on August 26, 1985, admitted the claimant's August 8-10, *826 1983, temporary disability, but denied any permanent disability or loss of wage-earning capacity. The employer alleged the statute of limitations as an affirmative defense and denied liability for medical services on the grounds that the claimant had not requested treatment from the employer, had not provided a physician's report within the statutory period, had not suffered a work-related injury, and had in fact suffered from a pre-existing condition.
On July 3, 1987, the administrative judge found that the claimant had established periods of temporary total and partial disability and that claimant suffered from a permanent disability unrelated to a pre-existing condition and resulting in a lost wage-earning capacity.[1] On July 21, 1987, the employer petitioned for Commission review.
On June 15, 1989, the Commission affirmed the administrative judge's order but amended it to reflect a 15% permanent impairment as found by a post-hearing medical examination requested by the employer. The Commission also found that Mr. Taplin earned $7.01 per hour at the time of his injury. The employer filed a notice of appeal from the Commission's order to the circuit court which affirmed the Commission's modified order. The employer filed a timely notice of appeal with this Court.

II. ANALYSIS

A. Standard of Review
This Court will overturn a Commission decision only for an error of law, Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1247 (Miss. 1991); V. Dunn, Mississippi Workmen's Compensation § 272 (3d ed. 1982), or an unsupportable finding of fact, Metal Trims Industries v. Stovall, 562 So.2d 1293, 1297 (Miss. 1990). This Court's standard of review when it examines Mississippi Worker's Compensation Commission decisions insures that the Commission's decision is supported by substantial evidence. Upon such a finding, this Court will uphold the Commission's decision. Hardin's Bakeries v. Dependent of Harrell, 566 So.2d 1261, 1264 (Miss. 1990); Georgia-Pacific Corp. v. Veal, 484 So.2d 1025, 1027-28 (Miss. 1986). This highly deferential standard of review essentially means that this Court will not overturn a Commission decision unless a court finds that the Commission's decision was arbitrary and capricious. Walker Mfg., 577 So.2d at 1247.

B. The Statute of Limitations and Latent Discovery
The decisive issue before this Court is whether the Commission erred by denying that the Worker's Compensation statute of limitations may be invoked by an employer when the claimant/employee clearly knew he had been injured in the subject accident, but did not discover the compensable nature of his injuries until over a year after the accident, and did not file a motion to controvert until over two years after the accident.[2]
*827 This state's basic rule for latent discovery in worker's compensation cases was first set out in Tabor Motor Co. v. Garrard, 233 So.2d 811, 817 (Miss. 1970): "The claim period begins to run from the time compensable injury becomes reasonably apparent." Relying on Tabor, the Court has noted that the statute is tolled until the claimant has "reason to foresee or ascertain" the likelihood of compensable injury "from which incapacity and its extent can reasonably be ascertained by medical evidence." Struthers Wells-Gulfport, Inc. v. Bradford, 304 So.2d 645, 649 (Miss. 1974). In a subsequent case similar to the one at hand, the Court found a latent compensable injury to exist when the claimant knew he had hurt his neck, obtained medical assurance that he had no compensable injury, and then two years later obtained a diagnosis that the initial injury had caused a latent compensable injury in the form of a degenerative disc condition. The Court held that the claimant acted with reasonable care and diligence and that under Tabor and Struthers had sustained a compensable injury. Pepsi Cola Bottling Co. v. Long, 362 So.2d 182, 184-185 (Miss. 1978). In Quaker Oats Co. v. Miller, 370 So.2d 1363, 1365-1366 (Miss. 1979), the Court adopted the rule that a claimant's awareness should arise from recognizing the "nature, seriousness, and probable compensable character" of the injury. Id. (citing Larson, Workmen's Compensation, § 78.41 (1978)). By way of comparison, in Benoist Elevator Co., Inc. v. Mitchell, 485 So.2d 1068, 1069 (Miss. 1986), the claimant was aware of a 1959 injury and significant aggravation it caused, but did not seek treatment until pain and dysfunction became severe in 1975. See also V. Dunn, Mississippi Workmen's Compensation, § 249 (3rd ed. 1982) and (Supp. 1990).
In the present case, based on the testimony presented before the administrative judge, the circuit court concluded that the claimant could not have known of the compensable nature of his injuries because, although he continued to seek treatment, even his physicians remained unaware of the compensable nature of his injuries until April of 1985. The claimant clearly knew that he had sustained an injury which continued to require medical attention, but this awareness did not rise to the level of giving him notice of compensability. The fact that Taplin's initial accident was more dramatic than those of the claimants in Struthers or Pepsi-Cola did not give him any greater notice of compensability. More critical to this Court's ruling is that Taplin's physicians did not notify him of the connection leading to compensability until a number of months after the accident.
The statute begins to run when the claimant is or reasonably should be aware of having sustained a compensable injury, but the statute is deemed not to have begun running if the claimant's reasonably diligent efforts to obtain treatment yield no medical confirmation of compensable injury. This state's laws do not penalize workers when they, with their physicians' assistance, cannot confirm that their injuries are compensable. Therefore, based on substantial evidence in the record, the court concluded that the latent nature of the claimant's injuries established April, 1985, as the beginning of the statutory limitation period. This led the court to appropriately conclude that the claimant's August 9, 1985, petition to controvert fell within the limitation period.

C. Permanent Partial Disability
The final issue is whether the Commission erred by awarding permanent partial disability benefits when the claimant was medically certified 15% permanently disabled, but was able to perform work at his former job. Taplin's discharge by the employer was based on a medical condition *828 overlooked on hiring ten years earlier, and he was unable because of his disability to perform jobs he once performed.
Dunn defines "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or other employment." V. Dunn, Mississippi Workmen's Compensation, § 72 (3d ed. 1982). Because a Commission determination of disability constitutes a finding of fact, V. Dunn, Mississippi Workmen's Compensation § 72.1 (3d ed. 1982), a reviewing court must employ the "substantial evidence" standard of review. A conclusion that the employee is disabled rests on a finding that the claimant could not obtain work in similar or other jobs and that the claimant's unemployability was due to the injury in question. V. Dunn, Mississippi Workmen's Compensation § 72.1 (3d ed. 1982). Once the claimant has made out a prima facie case, the employer assumes the burden to prove otherwise by showing that the claimant's efforts constituted mere sham or unreasonable effort. Id. Pontotoc Wire Products Co. v. Ferguson, 384 So.2d 601, 603-604 (Miss. 1980); Sardis Luggage Co. v. Wilson, 374 So.2d 826, 828 (Miss. 1979); Thompson v. Wells Lamont Corp., 362 So.2d 638, 641 (Miss. 1978).
If the claimant successfully establishes a disability and the injury suffered is not specifically scheduled by the Workers' Compensation statute, the claimant's disability is measured by loss of wage-earning capacity. Miss. Code Ann. § 71-3-17(25) (1972); V. Dunn, Mississippi Workmen's Compensation § 86 (3d ed. 1982); Robinson v. Packard Elec. Div. G.M.C., 523 So.2d 329, 331 (Miss. 1988). Disability measured in this manner is referred to as "industrial" disability as opposed to "functional" or "medical" disability; the claimant must prove industrial disability by proving medical impairment which results in diminished wage-earning capacity. Robinson, 523 So.2d at 331.
Thus, the fact that the employee has secured some form of employment does not, by itself, negate the employee's case for compensation. If, because of the subject injury, the employee cannot secure employment at pre-injury pay, then the employee may be entitled to disability payments. Piper Industries, Inc. v. Herod, 560 So.2d 732, 734-735 (Miss. 1990). In Piper, the Court's decision turned on the fact that the claimant's injury barred him from certain higher-paying jobs for which he had previously been qualified. Id. at 735. The Piper court quoted the Dunn observation that a determination of the claimant's "reasonable efforts" to secure employment could include consideration of job availability and economics in the community, the claimant's skills and background, as well as the subject disability itself. Id. at 735 (quoting V. Dunn, Mississippi Workmen's Compensation § 72.1).
In the present case, the Commission and circuit court accepted the medical and lay testimony that the claimant suffered from a disability resulting in a 15% permanent impairment. The proof supported the Commission's finding that the claimant made reasonable efforts, given his background and experience, to seek other employment, and that his lost wage-earning capacity amounted to $336.17 per week.
The employer argues that, because termination of the claimant was not predicated on the subject disability and because his other job search failures were due to employment conditions, the claimant has not made out a case for lost wage-earning capacity. Under Piper, however, local economic conditions may be considered in evaluating the reasonableness of the claimant's search.
Further, Piper supports a finding of lost wage-earning capacity if a claimant cannot perform the jobs he once could. In the instant case, the claimant testified that he can no longer perform a full day of plumbing or electrical work under conditions which might strain his neck. The employer here would require the claimant to prove that he had actually been rejected, because of his disability, at jobs for which he has stated he no longer considers himself a qualified applicant. The law does *829 not require such a showing of the claimant. It is enough that the Commission, affirmed by the circuit court, found that the claimant did sustain an injury leading to a disability which has diminished his wage-earning capacity, and that he has reasonably attempted to find employment.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Compensation benefits were allowed by the administrative judge as follows:

1. Temporary total disability benefits in the amount of $112.00 per week for the following days: August 8, 1983 until August 11, 1983; September 6, 1983; September 16, 1983; January 24, 1985; April 8, 1985 until May 15, 1985; and August 12, 1985 until December 4, 1985. There shall be added to each installment of compensation not timely paid the equivalent of ten percent (10%) thereof as provided in Mississippi Code Annotated, Section 71-3-37(5) (1972).
2. Permanent partial disability benefits in the amount of $112.00 a week beginning December 5, 1985, and continuing for a period not to exceed 450 weeks. There shall be added to each installment of compensation not timely paid the equivalent of ten percent (10%) thereof as provided in Mississippi Code Annotated, Section 71-3-37(5) (1972).
3. Pay for, furnish and provide to claimant all reasonable and necessary medical services and supplies as the nature of his injury or the process of his recovery may require as provided in Mississippi Code Annotated, Section 71-3-15 (1972).
[2] 71-3-35 Limitation.

(1) No claim for compensation shall be maintained unless, within thirty (30) days after the occurrence of the injury, actual notice was received by the employer or by an officer, manager, or designated representative of an employer. If no representative has been designated by posters placed in one or more conspicuous places, then notice received by any superior shall be sufficient. Absence of notice shall not bar recovery if it is found that the employer had knowledge of the injury and was not prejudiced by the employee's failure to give notice. Regardless of whether notice was received, if no payment of compensation (other than medical treatment or burial expense) is made and no application for benefits filed with the commission within two years from the date of the injury or death, the right to compensation therefor shall be barred... .