GRIFFIS, J.,
for the Court.
¶ 1. We consider this apportionment of benefits appeal from the Mississippi Workers’ Compensation Commission. The Commission adopted the decision of the administrative law judge (“ALJ”) and apportioned benefits at twenty-five percent.
¶ 2. The employer, Clear River Construction Company, Inc. (“Clear River”), appeals that decision and claims that the Commission was in error in granting only a twenty-five percent apportionment of benefits based on the medical evidence of severe pre-existing coronary disease.
¶ 3. Margaret Chandler, the widow of James Chandler, cross-appeals and raises two issues. First, she claims that no apportionment of death benefits was warranted. Second, she claims that she was entitled to penalties and interest on benefits and medical expenses the employer/carrier did not timely pay.
FACTS
¶ 4. James Wesley Chandler began working for Clear River in March of 1990. Chandler continued to work, as a full time mechanic, until his death at the age of fifty-nine. On October 26, 2000, James collapsed while at a job site. He was pronounced dead later that day. Margaret Darlene Chandler was the sole dependent.
¶ 5. An autopsy was ordered by the Hinds County Coroner. The autopsy determined that the cause of death was an acute myocardial infarction, a heart attack. The autopsy revealed that Chandler’s three major arteries were narrowed, with one having a clot that had formed very recently.
¶ 6. Mrs. Chandler filed a claim for workers’ compensation benefits. After a hearing, the ALJ ordered benefits be paid, pursuant to Mississippi Code Annotated Section 71-3-25 (Rev.2000), as follows: (1) an immediate lump sum of Two Hundred Fifty Dollars; (2) reasonable funeral expenses not exceeding Two Thousand Dollars, exclusive of other burial insurance or benefits; (3) twenty-six percent of Chandler’s average weekly wage of $659.93 during the widowhood or dependant widowhood, not to exceed the maximum limitations as to weekly benefits, with penalties and interest; and (4) all reasonable and necessary medical expenses incurred as a result of Chandler’s work injury.
¶ 7. In an opinion signed by Chairman Ben Barrett Smith and Commissioner Lydia Quarles, the Commission affirmed the ALJ’s order. Commissioner Barney Scho-by dissented and concluded that benefits should not be apportioned. Commissioner Quarles also filed a separate concurring opinion. Commissioner Quarles opined that she would concur with Chairman Smith. However, she would not have apportioned the case as did the administrative law judge. Commissioner Quarles analysis of the evidence led her to the conclusion that the ALJ disregarded cer *275 tain credible medical testimony. Commissioner Quarles stated that she believed that the proper apportionment was twenty-five percent work related and seventy-five percent attributable to Chandler’s preexisting condition.
¶ 8. On appeal, the Circuit Court of Madison County affirmed the Commission.
STANDARD OF REVIEW
¶ 9. An appellate court must defer to an administrative agency’s findings of fact if there is even a quantum of credible evidence which supports the agency’s decision. Hale v. Ruleville Health Care Center, 687 So.2d 1221, 1224 (Miss.1997). “This highly deferential standard of review essentially means that this Court and the circuit courts will not overturn a Commission decision unless said decision was arbitrary and capricious.” Id. at 1225; Georgia Pacific Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991). This court will overturn a commission decision only if there has been an error of law. Id.
¶ 10. We do not sit as triers of fact; that is done by the Commission. South Central Bell Telephone Co. v. Aden, 474 So.2d 584, 589 (Miss.1985). We do not review the facts on appeal to determine how we would resolve the factual issues were we the triers of fact, rather our function is to determine whether the factual determination made by the Commission is supported by substantial credible evidence. Id.
ANALYSIS
¶ 11. We begin our analysis with our review of the decision to apportion benefits. Apportionment is a term for the reduction in benefits due to a preexisting condition. The primary question here is whether the Commission correctly applied the apportionment provision, pursuant to Mississippi Code Annotated Section 71-3-7 (Rev.2000), which provides in part:
[w]here a preexisting physical handicap, disease, or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease, or lesion contributed to the production of the results following the injury.
¶ 12. In Cockrell Banana Co. v. Harris, 212 So.2d 581 (Miss.1968), the supreme court attempted to clarify several substantive and procedural issues on which the existing statute gave no guidance and prior decisions were discordant. 9 John R. Bradley and Linda A. Thompson, Workers’ Compensation Law, Encyclopedia of Mississippi Law § 76:88 (Jeffery Jackson & Mary Miller ed.2002). Shortly after the Cockrell Banana decision, the Mississippi Legislature codified the ruling word for word as the four lettered paragraphs in Section 71-3-7. Id.
¶ 13. More than twenty years later the supreme cburt again attempted to clarify the interpretation of the apportionment statute in Stuart’s Inc. v. Brown, 543 So.2d 649 (Miss.1989). However, the court stated that Stuart’s Inc. “does not address ‘occupational disease’ or heart attack cases. Indeed, heart attack cases seem sui generis." Id. at 655.
¶ 14. Next, in Hardin’s Bakeries v. Dependent of Harrell, 566 So.2d 1261, 1262 (Miss.1990), Harrell was delivering bread when he experienced chest pains. Harrell was admitted to the hospital with an- admitting diagnosis of “unstable angina, rule out recent myocardial infarction.” Id. Further tests revealed that Harrell was not experiencing a heart attack; however, a chest x-ray revealed lesions on Harrell’s lungs. Id. A week later, Harrell under *276 went a stressful bronchoscopy to determine if the lesions were cancerous. Id. Less than thirty minutes after the bron-choscopy was performed, Harrell went into cardiac arrest and died. Id. The final diagnoses were listed as cardiac arrest, myocardial infarction, and arteriosclerotic cardiovascular disease. Id. at 1262-63.
¶ 15. The ALJ awarded death benefits and apportioned the award by one-third on the basis of pre-existing or non-work related conditions. Id. The Commission affirmed the award of benefits but increased the apportionment to two-thirds. Id. The Commission’s decision was appealed to the circuit court, which affirmed the award of benefits, reversed the apportionment and awarded full benefits to the widow. The circuit court’s decision was finally appealed to the Mississippi Supreme Court. Id.
¶ 16. The supreme court found that “the problem inherent in an apportionment determination is evinced by the three different results reached in the case sub judi-ee” Id. at 1265. The supreme court found that, in light of the standard of review, the Commission’s fact-finding must remain undisturbed by the reviewing court if it is supported by substantial evidence, thus the Commission’s apportionment determination was reinstated. Id at 1266.
¶ 17. In Mitchell Buick, Pontiac and Equip. Co. v. Cash, 592 So.2d 978, 979 (Miss.1991), Cash was forced to leave work because he was experiencing a heart attack. Three years before the attack, Cash had been diagnosed as suffering from obstructive pulmonary disease and hypertension. Id. As a result of the heart attack, Cash was permanently and totally disabled. Id.
¶ 18. The ALJ denied compensation, and Cash appealed to the Commission. The Commission reversed the ALJ’s denial of compensation and remanded for a determination of the apportionment of benefits. Id. The ALJ again denied any compensation benefits and determined that Cash’s preexisting condition contributed one hundred percent towards his disability. Id. The Commission reviewed the ALJ’s determination and reversed the ruling. The Commission awarded Cash permanent total disability at the unapportioned rate of ninety-eight dollars ($98) per week, for just over four months, and then at the apportioned rate of twenty-five dollars ($25) per week, not to exceed the maximum limitations of 450 weeks. Id. This award was affirmed by the circuit court. The supreme court affirmed the Commission’s determination on the ground that it was not clearly erroneous and was supported by the evidence. Id. at 983.
¶ 19. These cases show that the application of this statute has been inconsistent. A case-by-case analysis indicates that these decisions are difficult to fit into a definite rule, which may be applied to all cases involving heart attacks. Vardaman S. Dunn, Mississippi Workers’ Compensation § 92 (3d ed.1990). Thus, we tend to uphold the decision of the Commission if it is supported by substantial evidence. Id. Ultimately, each case will have to be resolved on its own facts. Id.
¶ 20. The unique challenge of this case is that each of the three Workers’ Compensation Commissioners authored an opinion. Nevertheless, Chairman Smith and Commissioner Quarles signed the order that affirmed the ALJ’s decision to apportion benefits by twenty-five percent was reasonable. Commissioner Quarles was less than enthusiastic with the prospect of agreeing to affirm the ALJ’s apportionment amount. Nevertheless, Commissioner Quarles did in fact sign the order. Therefore, we must consider that decision as the order of the Commission, and we must give it the appropriate deference. *277 Had Commissioner Quarles not signed the order, then the ALJ’s order would have been affirmed as a plurality decision of the Commission. The amount of deference given to a plurality decision of the Commission has not been addressed by the appellate courts of this state, and it is not before us to address today.
¶ 21. Our review is focused on whether the evidence supported the award of benefits at the rate of apportionment.
¶ 22. Dr. Thomas Skelton, board certified in internal medicine and cardiovascular diseases, testified for Clear River. Dr. Skelton reviewed the autopsy and death certificate. He was told that Chandler was an equipment supervisor for Clear River and that Chandler was supervising a job when he collapsed. Dr. Skelton testified that the autopsy findings were typical of one who had a heart attack. Dr. Skel-ton further testified that atherosclerosis, diagnosed by autopsy, is a disease which develops over many years and is caused by factors such as smoking, diabetes, high blood pressure, and high cholesterol. Dr. Skelton opined that atherosclerosis is not something that is caused by environmental, physical, or emotional stress. He further opined that the disease was not related to Chandler’s occupation. Dr. Skelton consistently stated that only extreme physical or sudden, extreme change environmental stress conditions could precipitate a cardiac event.
¶23. Dr. Charu Subramony, a board certified pathologist, performed the autopsy on Chandler the day following his death. Dr. Subramony testified that she examined his heart and the coronary arteries very carefully and found that all three vessels were diseased. In addition to the chronic disease, one vessel had a clot completely occluding the blood vessel. Dr. Subramony opined that the clot caused the heart to have conduction disturbances, which caused Chandler’s death.
¶ 24. In Dr. Subramony’s opinion, strenuous exercise could only have accelerated Chandler’s death. She testified to the physiological effects of exercise and exertion, and how these effects could hasten a heart attack in a patient with chronic atherosclerosis. Dr. Subramony also determined that the clot had formed only hours before Chandler’s death. She also testified that there was a mechanism of repair. The repair would start a few hours after the clot forms, once the clot attaches to the wall repair begins. Dr. Subramony did not find any evidence that the repair process had begun.
¶ 25. In addition to the medical testimony, Margaret Chandler testified that her husband was so tired after work everyday that he slept about an hour in his chair when he first arrived home. Then, he ate dinner, took a bath, and went straight to bed. Mrs. Chandler also testified that even though her husband’s work uniforms were commercially laundered, she still had to re-wash his clothes several times to get the dirt, tar, and tack out of his clothes. She testified that Chandler had never taken any medication for heart problems or complained of chest pains.
¶ 26. Carter Stewart testified for Chandler. Stewart was a self-employed trim carpenter who worked at the same site as Chandler the day he collapsed. Stewart testified that he saw Chandler and his crew cutting a trench with a jackhammer across the asphalt driveway to- install a sprinkler system. Stewart did not personally observe Chandler’s work on the job site that day, but he was aware of the work that Chandler and his crew was performing. Stewart clearly remembered that Chandler had on a work uniform that was heavily soiled with grease and dirt.
*278 ¶ 27. Stewart was working on the roof when he was told that a worker had collapsed. Stewart saw Chandler lying on the asphalt driveway unconscious and not breathing. Stewart performed mouth-to-mouth resuscitation while another worker did chest compressions on Chandler. They continued to perform CPR until the volunteer fire department arrived. Stewart testified that Chandler never regained consciousness on the site.
¶ 28. Paul Black testified for Clear River. Black was a division manager for Clear River and had worked there for five years. On the day Chandler collapsed, Black arrived on the job site about 10:00 or 10:30 a.m. He could not recall whether Chandler was already there or arrived later. Black did not know what Chandler did from 7:00 a.m. until they met in Madison. Black did not know what Chandler would have done that morning to get dirty, but he testified that Chandler could have handled mechanic duties or any other work earlier that morning. Black testified that Chandler was a hard worker and could have performed physical labor earlier that morning.
¶ 29. Black recalled that Chandler did not operate the jackhammer or dig the trenches, but rather Chandler was standing and observing the two laborers. Black did remember that Chandler picked up some chunks of asphalt and threw them into the truck.
¶ 30. Based on the evidence presented, the ALJ found that the preponderance of the credible evidence revealed that Chandler engaged in physical labor for Clear River prior to his collapse and death. The evidence indicated that Chandler’s work for Clear River was hard, physical labor and that Chandler was a hard worker. The medical evidence also indicated that Chandler suffered from coronary artery disease, and a clot formed in one of his vessels causing the heart attack.
¶ 31. The ALJ held that the preponderance of the relevant credible evidence indicated that Chandler’s heart attack and death arose out of and in the course of his employment. Therefore, it was a compen-sable injury. The ALJ determined that the benefits were to be apportioned, according to the statute, by twenty-five percent. The ALJ also determined that Mrs. Chandler was entitled to recover penalties and interest on any installments not timely paid.
¶ 32. We find no error in the Commission’s decision that Chandler’s benefits should be apportioned. Likewise, we find that substantial evidence supports the amount of the apportionment. As an appellate court, we may not reevaluate the evidence and substitute our decision for that of the Commission. Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988). Instead, this Court has a duty to defer to the Commission when its decision can be supported. Id. Although we may not agree with the percentage of apportionment, we find that there was substantial credible evidence to support the Commission’s decision.
¶ 33. Additionally, we affirm the Commissions’ grant of penalties and interest on benefits that were not timely paid.
¶ 34. Accordingly, we affirm.
¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS AFFIRMED ON DIRECT APPEAL. ON CROSS-APPEAL, THE JUDGMENT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED IN EQUAL PARTS TO THE APPELLANT AND APPELLEE.
*279 KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.