# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-WC-00494-COA

**MUELLER INDUSTRIES, INC. AND STONINGTON INSURANCE COMPANY**                                        **APPELLANTS**

**v.**

**SHANNON WAITS**                                        **APPELLEE**

DATE OF JUDGMENT:                    03/22/2023
TRIBUNAL FROM WHICH            MISSISSIPPI WORKERS' COMPENSATION
APPEALED:                                     COMMISSION
ATTORNEY FOR APPELLANTS:    DANIEL P. CULPEPPER
ATTORNEY FOR APPELLEE:         YANCY B. BURNS
NATURE OF THE CASE:               CIVIL - WORKERS' COMPENSATION
DISPOSITION:                                REVERSED AND REMANDED - 05/13/2025
MOTION FOR REHEARING FILED:

**EN BANC.**

**EMFINGER, J., FOR THE COURT:**

¶1.     In an order dated March 22, 2023, the Mississippi Workers' Compensation Commission (Commission) ordered Mueller Industries Inc. and Stonington Insurance Company (collectively Mueller) to pay Shannon Waits his remaining workers' compensation benefits in the form of a lump sum payment in the amount of $33,411.11. Mueller appealed that decision.

## FACTS AND PROCEDURAL HISTORY

¶2.     The facts and procedural history in this case are extensive, as they stem from a claim that arose on November 14, 2014, when Waits sustained a work-related injury to his right arm and shoulder. Records show that Waits had surgery on his shoulder and was out of work

for several months. Records filed with the Commission show that Mueller paid Waits the maximum weekly amount for temporary total disability (TTD) benefits beginning the week of November 15, 2014, through November 21, 2014. Those payments were suspended when Waits returned to work, with restrictions, after he reached maximum medical improvement (MMI) on May 7, 2015.[1] The last TTD payment was made on May 1, 2015. The "Notice of Suspension of Payment" filed with the Commission on May 5, 2015, also states:

> Reason compensation was suspended: RTW light duty 4/25/15. IW Overpaid from 4/27/15-5/1/15-credit will be taken against PPD. Average weekly wage at time of injury was $826.29. Employee returned to work at weekly wage of $826.29.

A "Supplemental Agreement as to Compensation" was filed on June 9, 2015, which stated in part:

> TEMPORARY PARTIAL: Employee first became, or again became temporarily partially disabled on 5/11/2015, and is now receiving benefits at the rate of 2/3 of the decrease in wage earning capacity and continuing until further notice.[2]

A form filed with the Commission on July 14, 2015, showed the following decision:

> PERMANENT PARTIAL: Employee is entitled to compensation for the 25% loss of upper extremity, **commencing on 5/5/2015**, at the rate of $454.42 per week, and continuing for a period of 50 weeks.[3]

(Emphasis added). The record on appeal shows that Waits worked at Mueller and earned wages until about November 15, 2015, when his employment was terminated for reasons

---

[1] Waits was determined to have reached MMI on at least three different occasions in this case: May 7, 2015; February 13, 2017; and August 15, 2022.

[2] These payments will be referred to as TPD payments.

[3] These payments will be referred to as PPD payments.

2

unrelated to his injury.

¶3.     On January 28, 2016, Waits filed a "petition to controvert" with the Commission. Later, on April 5, 2016, Waits filed a "Motion to Substitute Orthopedic Surgeon and Other Relief." In this motion, Waits contends that his previous doctor failed to properly assess his disability and asked that TTD benefits be initiated "retroactively." After a telephonic hearing, the administrative judge (AJ) issued an order on April 29, 2016,[4] that provided, in part:

> Due to the severity of the injury and the fact that it is disabling by its very nature, employer/carrier shall reinstate temporary total disability benefits **retroactively** and shall continue said benefits until such time as claimant's required treatment has been completed and maximum medical improvement has been reached.

(Emphasis added). While the order used the word "retroactively," it does not state retroactive to any date. On June 6, 2016, Waits filed a "Motion to Enforce Order Awarding Past Due Indemnity Benefits" in which he maintained that Mueller had made no TTD payments in response to the April 29 order and asked that a hearing date be set for this motion. On July 12, 2016, Waits filed another motion to enforce the order, stating that TTD payments "had been paid through June 16, 2016." In this motion, Waits asked for past due payments with penalties and interest. On September 23, 2016, a telephonic hearing was conducted on this

---

[4] This was the first "award" by an AJ or the Commission. Placing Waits on TTD arguably should have stopped Mueller's voluntary TPD and PPD payments since the AJ's order did not address those payments. *See Walls v. Hodo Chevrolet Co.*, 302 So. 2d 862, 867-68 (Miss. 1974) ("However, it is also the general rule that a claimant may not pyramid benefits and receive in excess of the maximum weekly benefits provided by statute during any one period."); *Cockrell Banana Co. v. Harris*, 212 So. 2d 581, 585 (Miss. 1968) ("In dealing with another vital problem in the field of workmen's compensation law, this Court has said that permanent partial disability payments do not begin until the claimant has attained maximum medical recovery.").

motion. Pursuant to an order dated September 30, 2016, the AJ found that the failure to pay TTD by Mueller had been inadvertent and ordered timely payments be made in the future. The order waived the payment of penalties and interest.

¶4. After a hearing on the petition to controvert on June 14, 2017, the AJ entered an order on July 24, 2017, requiring Mueller to pay compensation benefits to Waits as follows:

1. Commencing on November 13, 2014 and concluding on February 13, 2017, temporary total disability benefits are applicable with proper credit to be given for any and all monies, wages or benefits previously paid to claimant during the aforementioned time frame.[5]

2. Permanent partial disability benefits are to be made in the amount of $454.42 per week, and are to conclude after a period of two hundred (200) weeks pursuant to Miss. Code Annot. Section 71-3-17(c)(1) and illustrative of one hundred percent (100%) industrial loss of use relative to the right upper extremity.

3. Penalties and interest, if applicable, in accordance with Miss. Code Annot. Section 71-3-37(5)(6).

4. Provide medical services and supplies to the claimant as required by the nature of the claimant's injury and the process of his recovery therefrom pursuant to Mississippi Code Annotated Section 71-3-15 and governed by the Fee Schedule.

Mueller appealed the AJ's decision to the full Commission, which affirmed and adopted the decision by order entered on February 8, 2018.

---

[5] At issue on appeal is how payments made by Mueller to Waits during the period of time between May 7, 2015, and November 15, 2015, should be credited. During this period, Waits was back at work and earned wages; therefore, he was not eligible for TTD. *See Flowers v. Crown Cork & Seal USA Inc.*, 167 So. 3d 188, 193 (¶15) (Miss. 2014). As noted in *Flowers* and by a previous filing by Mueller with the Commission noted above, Waits was entitled only to TPD during this period. We will address this conflict below. The order also did not address how to give Mueller "proper credit" for payments it had already made to Waits.

4

¶5.     Mueller appealed and challenged the finding that Waits was entitled to 100% PPD and that the administrative judge showed partiality toward Waits. *Mueller Ind. Inc.* (*Mueller I*) *v. Waits*, 283 So. 3d 1137 (Miss. Ct. App. 2019). This Court found that the Commission's decision was supported by substantial evidence and affirmed the full Commission's decision.[6] *Id*.

¶6.     After the July 24, 2017 order was affirmed in *Mueller I*, Waits filed an application with the Commission for a lump sum payment on November 18, 2019. Over the next several years, both Mueller and Waits made multiple filings with the Commission in an effort to have the Commission calculate and approve a lump sum payment for all the remaining benefits owed by Mueller to Waits pursuant to the July 24, 2017 order. On May 19, 2021, the Commission entered its "Order Regarding Lump Sum Computation and Motion to Exclude." In this order, the Commission found that Mueller had "**overpaid by \$12,915.78** the amount owed to [Waits] pursuant to the July 24, 2017, *Order of Administrative Judge* and ***owe no further indemnity benefits*** under the *Order*." (Emphasis added).

¶7.     The next day, on May 20, 2021, Waits filed an "Emergency Motion to Re-open Claim and/or Motion to Reconsider Order Regarding Lump Sum Order and Motion to Exclude." In this motion, Waits maintained that the Commission's calculations were based upon mistakes of fact, and he questioned the Commission's calculation of benefits due after an October 16, 2019 recurrence of his shoulder injury, which resulted in a new period of TTD. In reference to this motion, Waits stated that the calculation performed by an actuary (which

---

[6] We take judicial notice of documents in the appellate record in *Mueller I*. *See Badger v. State*, 290 So. 3d 377, 381 (¶14) (Miss. Ct. App. 2020).

5

the Commission referenced in finding that Mueller had overpaid his benefits) had not been disclosed, and Waits asked that it be made a part of the record.[7]

¶8.    A telephonic hearing was conducted on June 8, 2021, on this motion and others. As a result of that hearing, the Commission entered an "Order Granting Motion to Re-Open Claim and Motion to Compel Medical Treatment" on June 10, 2021. In this order, as a result of the October 16, 2019 recurrence of his shoulder injury, Waits was found to be temporarily totally disabled from that date and continuing until he is found to be at MMI. The order required Mueller to pay Waits for TTD at the rate of $454.42 per week from October 16, 2019, until MMI was reached. The order noted that the parties had agreed to wait until Waits reached MMI to pursue Waits' motion to re-open the claim as to the lump sum payment pursuant to the July 24, 2017 order. However, Waits did not wait to reach MMI. Instead, the very next day, on June 11, 2021, he filed a "Supplemental Motion to Reconsider Lump Sum Order."[8] On August 26, 2022, Mueller filed a "Notice of Suspension of Payment," noting that the last payment Mueller made to Waits for TTD was on August 14, 2022, because Waits reached MMI on August 15, 2022.

¶9.    In response to Waits' motion to reconsider the order regarding a lump sum payment, on March 22, 2023, the Commission entered the order that is the subject of this appeal. The

---

[7] We do not find this calculation in the record on appeal.

[8] There were a number of motions, responses to motions, replies to motions and attachments of letters and emails filed after this supplemental motion was filed. It got to a point where both counsel accused the other of unethical conduct. While most of these pleadings are not helpful to the resolution of this appeal, there is some information contained in these filings that will be useful in our analysis below.

order states that all payments made by Mueller to Waits prior to October 16, 2019, whether designated as TTD, TPD, or PPD, "shall be applied to the amounts owed pursuant to the July 24, 2017, Order."[9] The Commission then ruled:

> Based on this *Order* and Mueller and Stonington's November 11, 2022 payment ledger, the Commission asked an actuary to compute the lump sum amount, including penalties and interest, due to Waits based on the July 24, 2017, *Order of Administrative Judge*. The actuary's computations show that as of March 13, 2023, **Mueller and Stonington owe $33,411.11**, and we order payments of that amount by Mueller and Stonington to Waits. Payment of that amount within fourteen days of the date of this *Order* will complete Mueller and Stonington's obligation for payment of indemnity benefits, interest and penalties pursuant to the July 24, 2017, Order.

 (Emphasis added).

¶10.    Aggrieved, Mueller filed its notice of appeal on April 20, 2023. After the initial briefing was complete, this Court determined that the record on appeal was incomplete and, on its own motion, ordered the Commission Secretary to supplement the appellate record with the "November 11, 2022 payment ledger and the actuary's computations referenced in the final paragraph of the Commission's March 22, 2023 order."[10] This Court also ordered that upon "the Secretary's filing of the supplemental record with this Court's clerk, the employer/carrier [should] within thirty days file with this Court a true calculation by a certified public accountant as required by [Mississippi Rule of Appellate Procedure] 14(c)." After all the supplemental materials were filed, this Court directed the parties to file

---

[9] In this order, the Commission also vacated the May 19, 2021 order wherein the Commission ruled that Mueller had overpaid Waits by $12,915.78 and owed no further benefits under the July 24, 2017 order.

[10] This calculation was not disclosed to the parties prior to the Commission's ruling, just as the calculation relied upon for the May 19, 2021 ruling had not been disclosed.

7

supplemental briefs in response to the supplemental record filed on May 10, 2024, and the Rule 14(c) calculations "as they relate to the Commission's $33,411.11 lump sum award to the claimant." In its supplemental brief, Mueller asserts that the lump sum amount ordered by the Commission was incorrect and that Mueller should be allowed credits for "all monies, wages or benefits previously paid to the Claimant." Mueller further requests that this Court remand the matter back to the Commission with instructions to determine the calculation while taking into account credit for "all monies, wages or benefits" previously paid to Waits. Also, during the pendency of this appeal, Waits filed a "Motion to Dismiss Frivolous Appeal." Waits' motion will be considered along with the merits of the case below.

## STANDARD OF REVIEW

¶11. In *Clear River Construction Co. v. Chandler ex rel. Chandler*, 926 So. 2d 273, 275 (¶¶9-10) (Miss. Ct. App. 2006), this Court held:

> An appellate court must defer to an administrative agency's findings of fact if there is even a quantum of credible evidence which supports the agency's decision. *Hale v. Ruleville Health Care Center*, 687 So. 2d 1221, 1224 (Miss. 1997). "This highly deferential standard of review essentially means that this Court and the circuit courts will not overturn a Commission decision unless said decision was arbitrary and capricious." *Id*. at 1225; *Georgia Pacific Corp. v. Taplin*, 586 So. 2d 823, 826 (Miss. 1991). This court will overturn a commission decision only if there has been an error of law. *Id*.
>
> We do not sit as triers of fact; that is done by the Commission. *South Central Bell Telephone Co. v. Aden*, 474 So. 2d 584, 589 (Miss. 1985). We do not review the facts on appeal to determine how we would resolve the factual issues were we the triers of fact, rather our function is to determine whether the factual determination made by the Commission is supported by substantial credible evidence. *Id*.

## ANALYSIS

8

¶12. The actions and inactions of the parties and the Commission, over the course of time, have all worked together to create a Gordian knot that we doubt Alexander the Great could remedy with his sword. The confusion created by the changing circumstances in this case is reflected in the Commission order that is the subject of this appeal. In this order, the Commission attempts to retrospectively identify how all payments made by Mueller should be classified (either TTD, TPD, or PPD) and to calculate the lump sum payment due. But first, the Commission notes in its order:

> The parties cited scant, if any, relevant authority to support their positions, and our research did not reveal any guidance in statutes, case law, or the Commission's rules other than the general proposition that "The Commission shall have full power and authority to determine all questions relating to the payment of claims [for] compensation." Miss. Code Ann. § 71-3-47. **Because there is no specific guidance to help decide this issue, our decision is based on what we think is logical and makes sense**, what we perceive to be the parties' intent at the time the payments were made, and what will cause the least problems as the claim progresses to a resolution.

(Emphasis added). In any event, in an effort to move toward a resolution of the issues presented by this appeal, we start with the basics.

¶13. The primary purposes of the Mississippi Workers' Compensation Law were set forth by the Legislature in Mississippi Code Annotated section 71-3-1(3) (Rev. 2021) as follows:

> The primary purposes of the Workers' Compensation Law are **to pay timely** temporary and permanent disability benefits to every worker who legitimately suffers a work-related injury or occupational disease arising out of and in the course of his employment, to pay reasonable and necessary medical expenses resulting from the work-related injury or occupational disease, and to encourage the return to work of the worker.

(Emphasis added). In order to comply with the stated goal of providing **timely** benefits to injured workers, the law is based upon employers and their insurance carriers making

9

voluntary payments as required in Mississippi Code Annotated section 71-3-37 (1)-(2) (Rev. 2021):

> (1) Compensation under this chapter shall be paid periodically, **promptly**, in the usual manner, and directly to the person entitled thereto, **without an award** except where liability to pay compensation is controverted by the employer.

> (2) The first installment of compensation **shall become due on the fourteenth (14th) day** after the employer has notice, as provided in Section 71-3-35, of the injury or death, on which date all compensation then due shall be paid. Thereafter, compensation shall be paid in installments, every fourteen (14) days, except where the commission determines that payment in installments should be made at some other period.

(Emphasis added). As can be seen, there is an expectation that employers will make compensation payments directly to the injured employee in cases where the injury is clearly covered under the act. The Commission should receive timely notice of an injury, Miss. Code Ann. § 71-3-67 (Rev. 2021), notice of payment of compensation and timely notice of any suspension of payments. Miss. Code Ann. § 71-3-37(3). In most cases, these payments are made without an AJ or the Commission becoming involved. However, if the employer wishes to challenge liability for an injury or the employee wishes to challenge a decision of the employer as to the provision of benefits, either side can file a petition to controvert, and the Commission will decide the disputed matters.

¶14. This case started out like most others, with voluntary payments by Mueller. A "First Report of Injury or Illness" was filed with the Commission on November 17, 2014, wherein the Commission was advised that Waits had suffered a workplace injury on November 14, 2014. On December 8, 2014, a "Notice of First Payment of T.T.D. Benefits" was filed,

noting that Waits was paid $454.42 on November 20, 2014. Then, on May 5, 2015, a "Notice of Suspension of Payment" was filed. This form advised the Commission and Waits that the last payment to Waits of TTD was made on May 1, 2015, because Waits had returned to work on light duty on April 27, 2015. It is clear that Waits, or Mueller's insurance carrier, had provided Mueller with the note from his physician dated May 7, 2015, that stated Waits had reached MMI and was released to return to work on light duty on May 12, 2015.[11] On June 9, 2015, Mueller filed a "Supplemental Agreement as to Compensation," indicating that beginning on May 11, Waits would receive TPD as provided by law. The final "voluntary" act by Mueller (before the Commission became involved in the case) was the filing of a second "Supplemental Agreement as to Compensation" wherein Mueller agreed to pay Waits PPD at the rate of $454.42 per week for fifty weeks. Shortly after Waits' employment with Mueller was terminated for reasons other than his injury, Waits filed a "Petition to Controvert" on January 28, 2016.

¶15.    At this point, Mueller had paid Waits TTD payments of $454.42 from the date of his injury until he returned to work. Mueller had then agreed to pay Waits TPD payments after he returned to work, because, as noted above, he was no longer eligible for TTD payments. However, while it is clear that Waits earned wages after he returned to work, we cannot determine that TPD payments were properly calculated, pursuant to Mississippi Code Annotated section 71-3-21 (Rev. 2021), and paid. Neither the records provided by Mueller nor the Commission are clear on this point. Apparently, Mueller did not file a form with the

---

[11] This note was attached to later pleadings.

11

Commission indicating that it had suspended TPD payments when Waits was terminated. We must also note that Mueller had begun paying Waits PPD benefits at the rate of $454.42 per week and that no form was filed indicating that PPD payments were suspended. Ledgers filed by Mueller show that it completed the "voluntary" payment of the original fifty weeks of PPD on May 4, 2016; however, Mueller filed no form with the Commission indicating that such final payment had been made.

¶16.    All of this occurred before the AJ's April 29, 2016, order placing Waits on TTD and before the AJ ruled on Waits' Petition to Controvert on July 24, 2017. This award differed from how Waits' disability was treated by Mueller in making voluntary payments. The order provided that Waits was entitled to receive TTD payments for the entire period beginning November 13, 2014, and concluding on February 13, 2017. This conflicts with Mueller's supposed "voluntary" payment of TPD for the period of time between May 7, 2015, and November 15, 2015.  However, the AJ's order also required that "proper credit to be given for any and all monies, wages or benefits previously paid to claimant during the aforementioned time frame." What constitutes "proper credit" under these circumstances is the issue that must be resolved in this appeal.[12]

---

[12] The AJ's order also addressed Waits' permanent disability. While "voluntary" payments by Mueller were based upon a permanent 25% loss of use of Waits' right upper extremity, the AJ found that Waits suffered a "100% industrial loss of use relative to the right upper extremity." This changed the period of PPD payments from 50 weeks to 200 weeks, but the amount of the weekly benefit remained the same. There does not seem to be any argument challenging that finding in this appeal. In *Mueller I*, Mueller did challenge the finding that Waits had suffered a 100% industrial loss of use. This Court affirmed the full Commission's adoption of the AJ's finding in that regard. Credit for payments made before the Commission order and the designation of the period of TTD were not raised by the parties or addressed in *Mueller I*.

¶17. We recognize that ultimately, the Commission has the authority to determine what benefits a worker may be entitled to receive. In *Keys v. Military Department Gulfport*, 345 So. 3d 1206, 1210 (¶13) (Miss. Ct. App. 2022), this Court stated:

> Additionally, we find it beneficial to recognize that employers and carriers do not have the authority to classify the type of compensation benefits a claimant receives; only an AJ and the Commission have the authority to classify the degree of disability and the claimant's compensation benefits. *See Cockrell Banana Co. v. Harris*, 212 So. 2d 581, 585 (Miss. 1968) ("Naturally, neither the date of maximum medical recovery nor the determination of the percentage of apportionment are questions for determination by the employer or carrier."). The record indicates that the employer elected to begin making indemnity benefit payments to the claimant before the AJ had officially determined the claimant's degree of disability. . . . Notably, the employer's prompt and voluntary payment of indemnity benefits was well-intentioned, and we find this action meritorious; our ruling is not intended to discourage such actions in the future.

The instant appeal again presents the problem that is created when the encouraged, prompt, and voluntary acts of the employer are later placed in conflict with the Commission's ultimate decision as to benefits.

¶18. On appeal, particularly in its supplemental briefing, Mueller argues that after reviewing all the supplemental records produced by the Commission, Mueller was not given proper credit for the salary payments it made during the time period that Waits returned to work after reaching MMI on May 7, 2015, until his termination in November 2015. Mueller argues that at the same time Waits was receiving a salary during this period, he was also receiving PPD payments. On appeal, Mueller focuses on the classification of and credit given for payments made by Mueller to Waits during the approximate six-month period between May and November of 2015 while Waits was working for Mueller. Mueller argues

that it should be given "dollar for dollar" credit for actual earnings by Waits during the time the 2017 order stated that he was temporarily totally disabled. In the alternative, Mueller suggests that if this Court finds that Waits was not totally disabled during that period, we should remand for the Commission to make a proper calculation of his temporary partial disability. Waits contends that the full Commission's March 22, 2023 order should be affirmed.

¶19.    The conflict is whether Waits was temporarily totally disabled during this period as stated in the July 24, 2017 order, or whether Waits was temporarily partially disabled because he had returned to work and actually earned wages during this period. The parties now agree that Waits actually earned wages during the period in question.[13] In *Flowers v. Crown Cork & Seal USA Inc.*, 167 So. 3d 188, 191-92 (¶12) (Miss. 2014), the supreme court explained:

> "Disability," as defined by the Mississippi Workers' Compensation Act, is the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings." Miss. Code Ann. § 71-3-3(i) (Rev. 2011). The Act categorizes disabilities by duration as either temporary or permanent, and by degree as either partial or total. *See* Miss. Code Ann. § 71-3-17 (Supp. 2013). **"Temporary disability, whether total or partial, has reference to the healing period following injury, . . . until such time as the employee reaches the maximum benefit from medical treatment[.]"** *Triangle Distrib. v. Russell*, 268 So. 2d 911, 912 (Miss. 1972) (citation omitted). **After that point, any lingering disability is considered permanent.** *See McGowan v. Orleans Furniture, Inc.*, 586 So. 2d 163, 168 (Miss. 1991) (citing A. Larson, The Law of Workmen's Compensation § 57.12(c), at 10–22 to 10–29 (1989)).

(Emphasis added). The first issue to be resolved is whether Waits had reached MMI before

---

[13] The full Commission decided in its May 19, 2021 order that the payments Mueller made to Waits were earned and that TPD benefits *should have been* paid.

going back to work with Mueller. This was an issue that Waits contested in his petition to controvert. The AJ's first award in the April 29, 2016 order placed Waits on TTD and made no mention of Dr. Van Osten's MMI determination. The AJ's July 24, 2017 order recognizes that Dr. Van Osten placed Waits at MMI on May 7, 2015, and released him to return to work on May 12, 2015; however, the order did not make the finding that Waits reached MMI on that date. Instead, the order placed Waits at MMI on February 13, 2017. That was clearly the basis for placing Waits on TTD for the entire period.

¶20. However, under the cases we cite here, a person cannot be temporarily disabled, either totally or partially, if MMI has been achieved. Further, a person cannot be temporarily totally disabled if he is back at work and earning wages to some degree, regardless of whether MMI has been reached. Assuming the AJ rejected Dr. Van Osten's finding that Waits had reached MMI, then, since Waits was back at work and earning wages, he should have been placed at TPD pursuant to *Howard Industries Inc. v. Robinson*, 846 So. 2d 245, 253 (¶21) (Miss. Ct. App. 2002), where this Court reasoned:

> "Temporary disability, whether total or partial, has reference to the healing period following injury; it begins with the disabling injury and continues until such time as the employee reaches the maximum benefit from medical treatment, or differently expressed, it is a condition which exists until the injured employee is cured or is as far restored as the permanent character of his injuries will permit." *Triangle Distributors v. Russell*, 268 So. 2d 911, 912 (Miss. 1972) (emphasis added). *Russell* holds that the period of temporary disability is not necessarily a period of total disability. **Whether total or partial, temporary disability ends when the worker reaches maximum benefit from medical treatment.** *Id.* **at 912-13**. **Retaining substantial wage earning capacity** *and* **being returned by a physician to work while the healing process continues constitutes a temporary partial disability, not a total one**. **While temporarily and partially disabled, the injured worker is entitled to two-thirds of the difference between his average weekly**

15

**wages before the injury and his earning capacity during the period "in the same or other employment . . . ."** Miss. Code Ann. § 71-3-21 (Rev. 2000).

(Emphasis added). According to the appellate record, the Commission took the position, as early as 2020, that Waits was actually at TPD during the period he earned wages from Mueller from May to November of 2015. The method for calculating TPD benefits is set forth in section 71-3-21:

> In case of temporary partial disability resulting in decrease of earning capacity, there shall be paid to the injured employee sixty-six and two-thirds percent (66-2/3%) of the difference between the injured employee's average weekly wages before the injury and his wage-earning capacity after the injury in the same or other employment, **subject to the maximum limitations as to weekly benefits as set up in this chapter**, payable during the continuance of such disability but in no case exceeding four hundred fifty (450) weeks or an amount greater than the multiple of four hundred fifty (450) weeks times sixty-six and two-thirds percent (66-2/3%) of the average weekly wage for the state.

(Emphasis added).

¶21.    Applying this statute, the Commission has observed that with respect to "wages *actually* earned by the claimant" during periods of TPD, "[c]redit . . . is not the true issue." *Hendershot v. Weiser Sec. Sys. Inc.*, No. 97-08017-G-0280, 1999 WL 377899, at \*2-3 (Miss. Workers' Comp. Comm'n May 25, 1999) (emphasis added). Wages earned by the claimant post-injury are *relevant* to the determination of TPD benefits because they are relevant to the claimant's "wage-earning capacity after the injury." Miss. Code Ann. § 71-3-21. In other words, they are relevant to the determination of the amount of TPD benefits payable to the claimant, but they are not "credited" against that amount after it is determined.

¶22.    In at least some prior cases, the Commission has calculated TPD benefits as simply two-thirds of the difference between the claimant's pre-injury average weekly wage and his

16

actual post-injury earnings. *Hendershot*, 1999 WL 377899, at *3; *Hardaway v. Howard Indus. Inc.*, No. 09-06933-K-7217, 2014 WL 1724245, at *3 (Miss. Workers' Comp. Comm'n Apr. 22, 2014). This method may not be correct in all cases because a claimant's "wage-earning capacity after the injury" is not necessarily the same as his actual post-injury earnings. *See Karr v. Armstrong Tire & Rubber Co.*, 216 Miss. 132, 137, 61 So. 2d 789, 791 (1953) (interpreting the term "wage-earning capacity thereafter" in a permanent partial disability statute). However, in *Hardaway*, we affirmed the Commission's decision, stating that "in a case such as this one, the Commission may employ evidence of actual post-injury earnings as a rebuttable presumption of post-injury wage-earning capacity. Either party may rebut the presumption by relevant evidence showing that post-injury earnings are not an accurate reflection of post-injury earning capacity." *Howard Indus. Inc. v. Hardaway*, 191 So. 3d 1257, 1264 (¶18) (Miss. Ct. App. 2015) (citing *Nissan N. Am. v. Short*, 942 So. 2d 276, 280 (¶17) (Miss. Ct. App. 2006)).

¶23.    Here, for the weeks that Waits earned wages working for Mueller from May 2015 to November 2015, the Commission indicated that it calculated the TPD benefits that should have been paid as two-thirds of the difference between Waits' pre-injury average weekly wage and his actual post-injury earnings. That may be a valid method for calculating Waits' TPD benefits for those weeks, but we cannot review the Commission's computations on the present record. Therefore, we must reverse the order and remand this case to the Commission to determine whether TPD benefits were "properly" calculated and credited during this period.

¶24. We also note that the voluntary payments begun by Mueller, prior to the Commission's involvement, and the award of benefits by the AJ and the Commission resulted in periods of "overlapping" benefits. Mississippi Code Annotated section 71-3-13(1) (Rev. 2021) limits the amount of weekly benefits:

> Compensation for disability or in death cases shall not exceed sixty-six and two-thirds percent (66-2/3%) of the average weekly wage for the state per week, nor shall it be less than Twenty-five Dollars ($25.00) per week except in partial dependency cases and in partial disability cases.

Waits was not entitled to receive more than $454.42 in benefits per week. In *Tucker v. Bellsouth Tel. Inc.*, 130 So. 3d 96, 101 (¶16) (Miss. Ct. App. 2013), we held:

> It is a well-established rule "that a claimant may not pyramid benefits and receive in excess of the maximum weekly benefits provided by statute during any one period." *Walls v. Hodo Chevrolet Co. Inc.*, 302 So. 2d 862, 867 (Miss. 1974) (citations omitted).

When the Commission placed Waits on TTD, it should have suspended the voluntary PPD payments until Waits again reached MMI. Upon remand, in any week where Waits received more than the maximum weekly benefit, Mueller should be credited in subsequent weeks for any overage and should not be charged with penalties and interest for weeks where such credits are applied.

¶25. Further, on May 19, 2021, the Commission ruled that Mueller owed no further benefits under the July 24, 2017 order. That ruling stood until it was vacated by the March 22, 2023 order that is the subject of this appeal. We find that, as stated in that order, it is "logical and makes sense" that Mueller not be charged with penalties and interest beyond May 19, 2021, in the new calculation of any lump sum payment now due.

18

¶26.    On October 9, 2023, Waits filed a motion to dismiss the present appeal "as frivolous and/or on for failure to ensure that the record was complete." This Court on its own motion ordered supplementation of the appeal record and ordered supplemental briefing, rendering Waits' motion moot.   Because this Court reverses and remands this case back to the Commission for a result consistent with this opinion, we deny Waits' "Motion to Dismiss Frivolous Appeal" and the relief requested within it.

## CONCLUSION

¶27.    After reviewing the record and all the supplements, we find error with the Commission's order granting Waits lump sum disability benefits in the amount of $33,411.11.   We therefore reverse the order and remand the case to the Commission to calculate the total amount of benefits now owed to Waits, if any, and, consistent with this opinion:

1.    Determine whether TPD was properly calculated and credited for the weeks May 7, 2015-November 25, 2015; and

2.    Determine whether Waits received more than the maximum weekly benefit in any week and should Mueller be credited for any overage and, therefore, not charged with penalties and interest for any such "pre-paid" amounts; and,

3.    Mueller shall not be charged with penalties and/or interest after May 19, 2021, the date the Commission issued an order finding that Mueller owed Waits no further benefits.

The Commission should make its calculation available to the parties and should attach to its calculation a spreadsheet that identifies the due date of each payment, the date it was actually paid, and each payment as either TTD, TPD or PPD to show how the Commission arrived

19

at the final determination of the amount now due, if any.

¶28.    **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., LAWRENCE, McCARTY, WEDDLE AND ST. PÉ, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.; McCARTY, J., JOINS IN PART.**

**WESTBROOKS, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶29.    I concur with the majority that remand is necessary to address the impermissible overlap of temporary total disability benefits and permanent partial disability benefits. *See* Maj. Op. ¶24.

¶30.    However, I would not order a reevaluation of Waits's calculated temporary partial disability benefits for the period of May 2015 to November 2015. *See* Maj Op. ¶23. The statute looks at the "wage-earning capacity after the injury," which here, the Commission considered to be his actual post-injury earnings. *See* Miss. Code Ann. § 71-3-21 (Rev. 2021). Although use of this approach has been affirmed, "[e]ither party may rebut the presumption by relevant evidence showing that post-injury earnings are not an accurate reflection of post-injury earning capacity." *See* Maj. Op. ¶22 (quoting *Howard Indus. Inc. v. Hardaway*, 191 So. 3d 1257, 1264 (¶18) (Miss. Ct. App. 2015)).

¶31.    Here, after extensive proceedings before the Commission and even after this Court ordered supplementation of the record and supplemental briefing, we can still only say that the Commission's method "may be a valid method for calculating Waits's TPD benefits for those weeks, but we cannot review the Commission's computations on the present record."

Maj. Op. ¶23. The parties had ample opportunity to present evidence rebutting the presumption of wage-earning capacity and to designate a record for appeal that would facilitate review of this computation. Considering that, along with our standard of review, I would defer to the Commission's finding on this point of contention.

¶32.    Therefore, I concur in part and dissent in part.

**McDONALD, J., JOINS THIS OPINION. McCARTY, J., JOINS THIS OPINION IN PART.**